UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |
|---|---|
| **NETLIST, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 2:22-CV-294-JRG** |
| **MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS LLC,** | |
| **Defendants.** | |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES, TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC ("Micron" or "Defendants") submit this Answer and Affirmative Defenses in response to Plaintiff Netlist, Inc.'s ("Netlist" or "Plaintiff") First Amended Complaint.

The numbered paragraphs below correspond to the numbered paragraphs in the First Amended Complaint and constitute Defendants' responsive admissions, denials, and allegations thereto. Except as otherwise Defendants admit expressly below, Defendants deny each and every allegation contained in the First Amended Complaint, including, without limitation, the headings, subheadings, footnotes, diagrams, and tables contained in the First Amended Complaint.

Defendants reserve the right to amend or supplement their Answer and Affirmative Defenses.

## ANSWER TO FIRST AMENDED COMPLAINT

1.      Micron admits that Plaintiff's pleading purports to be a First Amended Complaint against Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron

1

Technology Texas, LLC.  Micron lacks sufficient knowledge or information to form a belief as to the truth of the other allegations in paragraph 1 of the First Amended Complaint and therefore denies the same.

2.      Micron admits that purported copies of U.S. Patent Nos. 7,619,912 (the "'912 patent"), 11,093,417 (the "'417 patent"), and 9,858,215 (the "'215 patent") (collectively, the "Asserted Patents") are attached to the First Amended Complaint as Exhibits 1 through 3, respectively.  Micron lacks sufficient knowledge or information to form a belief as to the truth of the other allegations in paragraph 2 of the First Amended Complaint and therefore denies the same.

## THE PARTIES

3.      Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 3 of the First Amended Complaint and therefore denies the same.

4.      Micron admits that it makes memory products in semiconductor fabrication plants for sale to customers. Except as expressly admitted, Micron denies the remaining allegations in paragraph 4.

5.      Micron Technology, Inc. ("MTI") admits that it is a Delaware corporation. MTI admits that it leases a property located at 950 W. Bethany Drive, Suite 120, Allen, Texas 75013. MTI admits that it is registered to do business in Texas. MTI admits that it can be served with certain process through its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Except as expressly admitted, Micron denies the remaining allegations in paragraph 5.

6.      Micron Semiconductor Products, Inc. ("MSP") admits that it is an Idaho corporation. MSP admits that it is registered to do business in Texas. MSP admits that it can be served with certain process through its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Except as expressly admitted,

Micron denies the remaining allegations in paragraph 6.

7.      Micron Technology Texas, LLC ("Micron Texas") admits that it is an Idaho limited liability company. Micron Texas admits that it uses the property located at 950 West Bethany Drive, Suite 120, Allen, Texas 75013-3837. Micron Texas admits that it can be served with certain process through its registered agent for service of process, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Except as expressly admitted, Micron denies the remaining allegations in paragraph 7 of the First Amended Complaint.

8.      Micron admits that MSP and Micron Texas are wholly owned subsidiaries of MTI. Micron admits that MTI currently does not separately report revenue from MSP or Micron Texas in its public filings submitted to the Securities Exchange Commission. Except as expressly admitted, Micron denies the remaining allegations in paragraph 8.

9.      Micron admits that it makes memory products in semiconductor fabrication plants for sale to customers. Except as expressly admitted, Micron denies the remaining allegations in paragraph 9.

10.      Micron denies the allegations of paragraph 10.

## JURISDICTION AND VENUE

11.      Paragraph 11 contains conclusions of law and not averments of fact to which the rules require an answer, but insofar the rules require an answer, Micron admits that the First Amended Complaint purports to assert an action under the patent laws of the United States, 35 U.S.C. § 271 *et seq*., and that this Court has subject matter jurisdiction over actions for patent infringement under 28 U.S.C. § 1338(a).

12.      Based solely on the allegations in the First Amended Complaint, and assuming (without admitting) them to be true, Micron does not contest personal jurisdiction in this district in this case.  Except as expressly admitted, Micron denies the remaining allegations in paragraph

12.

13.    Based solely on the allegations in the First Amended Complaint, and assuming (without admitting) them to be true, Micron does not contest personal jurisdiction in this district in this case.  Except as expressly admitted, Micron denies the remaining allegations in paragraph 13.

14.    Micron denies the allegations of paragraph 14.

## FACTUAL ALLEGATIONS

### Background

15.    Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15 of the First Amended Complaint and therefore denies the same.

16.    Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 of the First Amended Complaint and therefore denies the same.

17.    Micron denies that the allegations in paragraph 17 of the First Amended Complaint are complete or accurate, and on that basis denies them.

18.    Micron admits that the JEDEC Solid State Technology Association ("JEDEC") is a standardization body that develops open standards and publications for a broad range of semiconductor technologies, including memory modules.  Micron denies that the remaining allegations in paragraph 18 of the First Amended Complaint are complete or accurate, and on that basis denies them.

19.    Micron admits that DIMMs are a type of memory technology.  Micron denies that the remaining allegations in paragraph 19 of the First Amended Complaint are complete or accurate, and on that basis denies them.

20.    Micron admits that LRDIMMs are a type of memory technology.  Micron denies that the remaining allegations in paragraph 20 of the First Amended Complaint are complete or

accurate, and on that basis denies them.

21.     Micron lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21 of the First Amended Complaint and therefore denies the same. Micron also denies that the allegations in paragraph 21 of the First Amended Complaint are complete or accurate, and on that basis denies them.

**The Asserted '912 Patent**

22.     Micron admits that the '912 Patent states, on its face, that it is entitled "Memory Module Decoder" and that it lists Jayesh R. Bhakta and Jeffrey C. Solomon as inventors.  Micron further admits that the '912 Patent states, on its face, that it was filed as Application No. 11/862,931 on September 27, 2007, issued as a patent on November 17, 2009, and purports to claim priority to three provisional applications: Nos. 60/588,244 filed on July 15, 2004 60/550,668 filed on March 5, 2004, and 60/575,595 filed on May 28, 2004 and to an application, filed July 1, 2005, now U.S. Patent No. 7,289,386, which is a continuation-in-part of application No. 11/075,395, filed March 7, 2005, now U.S. Patent No. 7,286,436.  Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 22 of the First Amended Complaint, and therefore denies them.

23.     Micron admits that Netlist identified the '912 Patent among other patents in a letter dated April 28, 2021.  Micron admits that Netlist alleged infringement of the '912 Patent in the First Amended Complaint. Micron denies the remaining allegations in paragraph 23 of the First Amended Complaint.

24.     Micron denies that the allegations in paragraph 24 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron further denies that paragraph 24 of the First Amended Complaint accurately quoted Exhibit 1, 1:20-2:42.

25.     Micron admits that paragraph 25 of the First Amended Complaint appears to

accurately quote Exhibit 1, 7:9-13.   Micron denies that paragraph 25 of the First Amended Complaint accurately quotes Exhibit 1, 6:64-7:19. Micron denies that the remaining allegations in paragraph 25 of the First Amended Complaint are complete or accurate, and on that basis denies them.

26.      Micron denies that paragraph 26 of the First Amended Complaint accurately quotes Exhibit 1, 4:42-58, 4:59-5:5, and 22:5-14. Micron denies that the remaining allegations in paragraph 26 of the First Amended Complaint are complete or accurate, and on that basis denies them.

27.      Micron admits that paragraph 27 of the First Amended Complaint appears to copy Figure 1A of Exhibit 1.  Micron denies that the remaining allegations in paragraph 27 of the First Amended Complaint are complete or accurate, and on that basis denies them.

28.      Micron denies that paragraph 28 of the First Amended Complaint accurately quotes Exhibit 1, 6:55-7:19, 6:61-63, 7:35-53, Fig. 1A. Micron denies that the remaining allegations in paragraph 28 of the First Amended Complaint are complete or accurate, and on that basis denies them.

### The Asserted '417 Patent

29.      Micron admits that the '417 Patent states, on its face, that it is entitled "Memory Module With Data Buffering" and that it lists Jayesh R. Bhakta and Jeffrey C. Solomon as inventors.  Micron further admits that the '417 Patent states, on its face, that it was filed as Application No. 16/695,020 on November 25, 2019, issued as a patent on August 17, 2021, and claims priority to five provisional applications: Nos. 60/645,087, filed on January 19, 2005, 60/590,038, filed on July 21, 2004, 60/588,244 filed on July 15, 2004, 60/550,668 filed on March 5, 2004, and 60/575,595 filed on May 28, 2004.  Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 29 of the First Amended

Complaint, and therefore denies them.

30.     Micron admits that Netlist alleged infringement of the '417 Patent in the First Amended Complaint. Micron denies the remaining allegations in paragraph 30 of the First Amended Complaint.

31.     Micron admits that the '417 Patent includes the language "enable registered transfers of N-bit wide data signals associated with the memory read or write command between the N-bit wide memory bus and the memory devices in response to the data buffer control signals and in accordance with an overall CAS latency of the memory module, which is greater than an actual operational CAS latency of the memory devices." '417 Patent at Abstract. Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 31 of the First Amended Complaint, and therefore denies them.

<strong>The Asserted '215 Patent</strong>

32.     Micron admits that the '215 Patent states, on its face, that it is entitled "Memory Module With Data Buffering" and that it lists Jayesh R. Bhakta and Jeffrey C. Solomon as inventors. Micron further admits that the '417 Patent states, on its face, that it was filed as Application No. 14/715,486 on May 18, 2015, issued as a patent on January 2, 2018, and claims priority to five provisional applications: Nos. 60/645,087, filed on January 19, 2005, 60/590,038, filed on July 21, 2004, 60/588,244 filed on July 15, 2004, 60/550,668 filed on March 5, 2004, and 60/575,595 filed on May 28, 2004. Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 32 of the First Amended Complaint, and therefore denies them.

33.     Micron admits that Netlist identified the '215 Patent among other patents in a letter dated April 28, 2021. Micron admits that Netlist alleged infringement of the '215 Patent in the First Amended Complaint. Micron denies the remaining allegations in paragraph 33 of the First

Amended Complaint.

34.    Micron admits that the '215 Patent includes the language "memory module further comprises logic providing first control signals to the buffer to enable communication of a first data burst between the memory controller and the at least one first memory integrated circuit through the buffer in response to a first memory command, and providing second control signals to the buffer to enable communication of a second data burst between the at least one second memory integrated circuit and the memory bus through the buffer in response to a second memory command." '215 Patent at Abstract.  Micron lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in paragraph 34 of the First Amended Complaint, and therefore denies them.

**Micron's Activities[1]**

35.    Micron admits that certain Micron entities design and manufacture memory and storage products, including DRAM, DIMMs, and Multichip Packages.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 35.

36.    Micron admits that it received a letter from Netlist dated April 28, 2021.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 36.

**DDR4 Memory Modules**

37.    Micron admits that the First Amended Complaint purports to define the "Accused Products" as stated in paragraph 37.  Except as expressly admitted, Micron denies the remaining allegations of paragraph 37.

---

[1] Micron denies the allegations contained in the header preceding paragraph 35.

**FIRST ALLEGED CLAIM FOR RELIEF – '912 PATENT[2]**

38.    Micron repeats and incorporates by reference its responses to the allegations of the foregoing paragraphs of the First Amended Complaint as described above.

39.    Micron denies the allegations of paragraph 39.

**SECOND ALLEGED CLAIM FOR RELIEF – '417 PATENT**

40.    Micron repeats and incorporates by reference its responses to the allegations of the foregoing paragraphs of the First Amended Complaint as described above.

41.    Micron denies the allegations of paragraph 41.

42.    Micron admits that a purported copy of a Micron DDR4 SDRAM LRDIMM Core product description document is attached to the First Amended Complaint as Exhibit 6. Micron denies the remainder of paragraph 42 to the extent that it does not accurately quote this document and any remaining allegation.

43.    Micron denies that the allegations in paragraph 43 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown above" allegation in paragraph 43 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies them.

44.    Micron denies that the allegations in paragraph 44 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 44 purports to provide images from Exhibit 5 to the First Amended Complaint, but denies that paragraph 55 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations.  Micron

---

[2] The allegations included in the footnote to the header preceding paragraph 38 appear to This paragraph sets forth legal conclusions and questions of law to which no response is required.  To the extent a response is required, Micron denies the allegations in the footnote to the header preceding paragraph 38.

also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown above and below" allegation in paragraph 44 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies the remaining allegations.

45.     Micron denies that the allegations in paragraph 45 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 45 purports to provide images from Exhibit 5 to the First Amended Complaint, JEDEC DDR4 SDRAM Standard 79-4C (Exhibit 8), or JEDEC 82-31A RCD Standard (Exhibit 9), but denies that paragraph 45 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.  Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown below" allegation in paragraph 45 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies them.

46.     Micron denies that the allegations in paragraph 46 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 46 purports to provide images from JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 46 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations.

47.     Micron denies that the allegations in paragraph 47 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 47 purports to provide images from Exhibit 5 to the First Amended Complaint and JEDEC DDR4 SDRAM Standard 79-4C, but denies that paragraph 47 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations. Micron also lacks knowledge or information sufficient

to form a belief as to the truth of the "[a]s shown above" allegation in paragraph 47 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies them.

48.     Micron denies that the allegations in paragraph 48 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 48 purports to provide images from Exhibit 5 to the First Amended Complaint and JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 48 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

49.     Micron denies that the allegations in paragraph 49 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 49 purports to provide images from EDEC 82-32A Data Buffer Standard (Exhibit 7) and JEDEC 82-31A RCD Standard (Exhibit 9), but denies that paragraph 49 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

50.     Micron denies that the allegations in paragraph 50 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 50 purports to provide images from JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 50 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations.

51.     Micron denies the allegations of paragraph 51.

52.     Micron denies the allegations of paragraph 52.

53.     Micron denies the allegations of paragraph 53.

**THIRD ALLEGED CLAIM FOR RELIEF – '215 PATENT**

54.     Micron repeats and incorporates by reference its responses to the allegations of the

foregoing paragraphs of the First Amended Complaint as described above.

55.     Micron denies the allegations of paragraph 55.

56.     Micron admits that a purported copy of a Micron DDR4 SDRAM LRDIMM Core product description document is attached to the First Amended Complaint as Exhibit 6. Micron denies the remainder of paragraph 56 to the extent that it does not accurately quote this document and any remaining allegation.

57.     Micron denies that the allegations in paragraph 57 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 57 purports to provide images taken from JEDEC DDR4 SDRAM Standard 79-4C (Exhibit 8), JEDEC DDR4 SDRAM Standard 79-4C (Exhibit 8), and Exhibit 5 to the First Amended Complaint, but denies that paragraph 57 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

58.     Micron denies that the allegations in paragraph 58 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 58 purports to provide images taken from Exhibit 5 to the First Amended Complaint, but denies that paragraph 58 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations. Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown above and below" allegation in paragraph 58 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies the remaining allegations.

59.     Micron denies that the allegations in paragraph 59 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 59 purports characterize Exhibit 5 to the First Amended Complaint and JEDEC DDR4 SDRAM Standard 79-

4C (Exhibit 8), but denies that paragraph 59 accurately quotes these Exhibits, and therefore denies the remaining allegations.

60.     Micron denies that the allegations in paragraph 60 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 60 purports provide images from Exhibit 5 to the First Amended Complaint, but denies that paragraph 60 accurately quotes this Exhibit, and therefore denies the remaining allegations.

61.     Micron denies that the allegations in paragraph 61 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 61 purports provide images from JEDEC DDR4 SDRAM Standard 79-4C (Exhibit 8) and JEDEC 82-31A RCD Standard (Exhibit 9), but denies that paragraph 61 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

62.     Micron denies that the allegations in paragraph 62 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 62 purports provide images from Exhibit 5 to the First Amended Complaint and JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 62 otherwise accurately quotes these Exhibits, and therefore denies the remaining allegations.

63.     Micron denies that the allegations in paragraph 63 of the First Amended Complaint are complete or accurate, and on that basis denies them.  Micron admits that paragraph 63 purports provide images from JEDEC 82-32A Data Buffer Standard (Exhibit 7), but denies that paragraph 62 otherwise accurately quotes this Exhibit, and therefore denies the remaining allegations. Micron also lacks knowledge or information sufficient to form a belief as to the truth of the "[a]s shown above and below" allegation in paragraph 58 because Netlist did not identify the specific reference to which it is purporting to make a comparison in this paragraph, and therefore denies

the remaining allegations.

64.     Micron denies the allegations of paragraph 64.

65.     Micron denies the allegations of paragraph 65.

66.     Micron denies the allegations of paragraph 66.

## DEMAND FOR JURY TRIAL

67.     Micron admits that the First Amended Complaint purports to demand a trial by jury on all issues so triable.

## [NETLIST'S] PRAYER FOR RELIEF

Micron denies that Netlist is entitled to any relief in this action, as requested in paragraphs (A) through (H) of Netlist's Prayer for Relief or otherwise.

## MICRON'S AFFIRMATIVE DEFENSES

Subject to its responses above, and upon information and belief, Micron alleges and asserts these defenses in response to the allegations in the First Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated.  In addition to the affirmative defenses described below, subject to the responses above, Micron reserves all rights to allege additional defenses pursuant to any scheduling order, that become known through the course of discovery, or otherwise.

## FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

1.      Netlist has failed to plead its claims with sufficient specificity or factual support to place Micron on notice of the claims Netlist is asserting against it, such that Netlist has failed to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE – NON-INFRINGEMENT

2.      Micron has not infringed and does not infringe (i) directly, either literally or under the doctrine of equivalents, (ii) indirectly by contributing to infringement by others, either literally

14

or under the doctrine of equivalents, and/or (iii) indirectly by inducing others to infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents, willfully or otherwise.

### THIRD AFFIRMATIVE DEFENSE – INVALIDITY

3.      One or more claims of the Asserted Patents are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### FOURTH AFFIRMATIVE DEFENSE – PROSECUTION HISTORY ESTOPPEL

4.      One or more claims are limited by the text of the Asserted Patents and prosecution histories of the Asserted Patents and related patents such that Netlist is estopped, or otherwise precluded, from asserting that the claim is infringed by Micron, literally or by equivalents.

### FIFTH AFFIRMATIVE DEFENSE – WAIVER AND ESTOPPEL

5.      Netlist's claims for relief, in whole or in part, are barred by the doctrines of waiver and/or equitable estoppel.

### SIXTH AFFIRMATIVE DEFENSE – LICENSE AND COVENANT NOT TO SUE

6.      Netlist's claims for relief, in whole or in part, are precluded to the extent any of the claims of the Asserted Patents are subject to a license and covenant not to sue, express and/or implied.

### SEVENTH AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

7.      Netlist's recovery for any infringement of the Asserted Patents that it might establish is limited to any established infringement occurring no more than six years before the filing of this lawsuit, pursuant to 35 U.S.C. § 286.

### EIGHTH AFFIRMATIVE DEFENSE – LACK OF MARKING

8.      Netlist's recovery for alleged infringement of the Asserted Patents, if any, is limited

to alleged infringement committed after Netlist provided actual or constructive notice of infringement under 35 U.S.C. § 287.

### NINTH AFFIRMATIVE DEFENSE – NO WILLFUL INFRINGEMENT

9.    Netlist fails to state a claim for relief against Micron for enhanced or increased damages for willful infringement.

### TENTH AFFIRMATIVE DEFENSE – NO EXCEPTIONAL CASE

10.    Netlist fails to state a claim for relief against Micron for exceptional case under 35 U.S.C. § 285.

### ELEVENTH AFFIRMATIVE DEFENSE – NO COSTS

11.    Netlist is barred by 35 U.S.C. § 288 from recovering any costs associated with this lawsuit.

### TWELFTH AFFIRMATIVE DEFENSE – LACK OF STANDING

12.    To the extent that Netlist was not the sole and total owner of all substantial rights in any of the Asserted Patents as of the filing date of the First Amended Complaint, Netlist lacks standing to bring one or more claims in this lawsuit.

### THIRTEENTH AFFIRMATIVE DEFENSE – EXHAUSTION

13.    Netlist's claims are barred, in whole or in part, by the doctrine of patent exhaustion.

### FOURTEENTH AFFIRMATIVE DEFENSE – ABSENCE OF DAMAGES

14.    Netlist has not suffered and will not suffer any injury or damages as a result of Micron's alleged conduct.

### FIFTEENTH AFFIRMATIVE DEFENSE – INTERVENING RIGHTS

15.    Netlist is barred, in whole or in part, under principles of intervening rights.

16.    The claims of the '912 patent were subject to reexamination. During the course of the reexamination, Netlist canceled originally issued claims 2, 5, 7, 9, 21, 23, 25, 26, 30, 33, 42,

44, and 51; amended claims 1, 15, 16, 28, 39, and 43; and added new claims 52–91. Claims 3, 4, 6, 8, 10–14, 17–20, 22, 24, 27, 29, 31, 32, 34–38, 40, 41, and 45–50 were deemed patentable because of their dependence on amended claims. These amendments and additions, as well as arguments made by Netlist during the reexamination proceeding, substantively changed the scope of the originally issued claims of the '912 patent. Following an appeal to the Federal Circuit, the Patent Office issued an *Inter Partes* Reexamination Certification for the '912 patent on February 8, 2021.

17.     As a consequence of those amendments and additions, as well as Netlist's reexamination proceeding arguments, the making, using, selling, offering for sale, and/or importing of the Micron's Accused   Products are protected by absolute and/or equitable intervening rights. In particular, to the extent that Netlist's allegations are based on Micron's Accused Products that were made, used, offered for sale, sold, and/or imported prior to the issuance of the reexamination certificate, the defense of absolute intervening rights bars any liability for infringement with respect to such products. To the extent Netlist's accusations are based on Micron's Accused Products that were made, used, offered for sale, sold, and/or imported after the issuance of the reexamination certificate, the defense of equitable intervening rights applies, because Micron made substantial preparation of those products prior to issuance of the certificate. Netlist's infringement allegations thus are barred, in whole or in part, by absolute and/or equitable intervening rights under 35 U.S.C. §§ 252 and 307(b).

## SIXTEENTH AFFIRMATIVE DEFENSE – LACHES, INEQUITABLE CONDUCT, AND UNCLEAN HANDS

18.     Netlist is barred, in whole or in part, under principles of equity, including laches, prosecution laches, inequitable conduct, and unclean hands.  Netlist is also barred by issue preclusion from reasserting or altering its positions on factual and legal issues that were previously

adjudicated.

19.     Individuals substantively involved in the prosecution of the '912 Patent made false and misleading statements to the Patent Office and the Federal Circuit that were material to the patentability of the amended claims. On information and belief, these individuals specifically intended to deceive the Patent Office and the Federal Circuit into believing that the amendment of certain claims in the '912 patent were "narrowing" in scope, thereby distinguishing those claims from the prior art. On information and belief, these individuals misrepresented the intended effect of the amendments in order to secure allowance of the amended claims, knowing that Netlist would later adopt the position in litigation that the amendments were in fact not "narrowing" at all, but rather recited "inherent functions" that were already required by the original claims.

### Netlist Individuals Substantively Involved in the '912 Reexamination

20.     On information and belief, at least the following people associated with Netlist were substantively involved in the *inter partes* reexamination proceedings with respect to the '912 patent: Gail Sasaki, Mehran Arjomand, and David S. Kim (collectively "Netlist Individuals Substantively Involved in the '912 Patent Reexamination").

21.     On information and belief, Gail Sasaki was, during the reexamination proceedings for the '912 patent, an employee and/or contractor for Netlist who signed the power of attorney appointing counsel of record to prosecute the reexamination proceeding on behalf of Netlist.

22.     Mehran Arjomand and David S. Kim served as counsel of record for Netlist in connection with the *inter partes* reexamination proceedings for the '912 patent.

23.     On information and belief, the Netlist Individuals Substantively Involved in the '912 Patent Reexamination withheld information that they knew to be material to the patentability of the '912 patent with the specific intent to deceive the Patent Office in order to secure allowance

of certain amended claims.

24.     On information and belief, each of the Netlist Individuals Substantively Involved in the '912 Reexamination is an individual associated with the prosecution of the '912 patent during the *inter partes* reexamination proceedings, which ultimately led to the issuance of an *Inter Partes* Reexamination Certificate on February 8, 2021. 70

**<u>Netlist Made Narrowing Amendments to Claims During Reexamination</u>**

25.     The '912 patent was originally filed in the United States on September 27, 2007 by inventors Jayesh R. Bhakta and Jeffrey C. Solomon. The '912 patent, titled "Memory Module Decoder," issued on November 17, 2009. Netlist claims to own all rights, title, and interest in the '912 patent.

26.     On April 20, 2010, a first request for *inter partes* reexamination of claims 1–51 of the '912 patent was filed by third party requester Inphi. The Patent Office assigned this request control No. 95/001,339 ("'339 proceeding") and ultimately ordered the reexamination of claims 1–51 of the '912 patent on September 1, 2010.

27.     On October 20, 2010, a second request for *inter partes* reexamination of claims 1, 6, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent was filed by third party requester SMART Modular Technologies (WWH), Inc. ("SMART"). The Patent Office assigned this request control No. 95/000,578 ("'578 proceeding") and ordered reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent on January 14, 2011.

28.     On October 21, 2010, a third request for *inter partes* reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent was filed by Google. The Patent Office assigned this request control No. 95/000,579 ("'579 proceeding") and

ordered reexamination of claims 1, 3–4, 6–11, 15, 18–22, 24–25, 27–29, 31–34, 36–39, 41–45, and 50 of the '912 patent on January 18, 2011.

29.     The Examiner in the '578, '579, and '339 proceedings agreed with Inphi, SMART, and Google that the proposed combination of Micron, DDR SDRAM RDIMM, MT36VDDF12872 & MT36VDDF28672 Data Sheet, 2002 ("Micron Art") in view of U.S. Patent Application Publication No. 2006.0117152 ("Amidi") presented a substantial new question of patentability and that "a reasonable examiner would consider the teaching of Micron Art and Amidi important in deciding the patentability of" the challenged claims. *See* January 14, 2011 Reexamination Ordered.

30.     On February 25, 2011, the PTO *sua sponte* merged the '578, '579, and '339 proceedings into a single matter, as all three proceedings were pending, had yet to be terminated, and involved overlapping claims of the same patent.

31.     After the merger, Netlist argued against the pending rejections of the existing claims and added new claims 52–118. *See* Netlist's July 5, 2011 Response to Office Action in *Inter Partes* Reexamination Communication Mailed April 4, 2011. For example, Netlist argued that the phase-lock loop device disclosed in Amidi was not "operatively coupled" to its CPLD. Netlist narrowed the scope of the "operatively coupled" feature by arguing that in the context of the '912 patent the phrase means that "the operations of the logic element 40 are clocked either directly or indirectly (e.g., through a clock buffer) by the output of the PLL 50" and that "the output of the PLL 50 controls the operation of the logic element 40."

32.     Google responded by explaining how Micron Art and Amidi rendered obvious both the original and new claims. *See* August 29, 2011 Response. Google also explained how Micron Art, Amidi, U.S. Patent No. 5,926,827 ("Dell 2"), and Double Data Rate (DDR) SDRAM

Specification, JEDEC Standard No. 79C, March 2003 ("JEDEC 79C") rendered obvious the new claims. *Id.* The Examiner adopted some aspects of the grounds raised by Google, rejected other aspects, and declined to adopt other grounds. *See* October 14, 2011 Non-Final Office Action. Netlist responded by canceling some of its claims, amending most of the remaining claims, and adding new claims 119–136. *See* January 14, 2012 Netlist's Response After Non-Final Action. Google again responded by continuing to argue, among other things, that Micron Art, Amidi, Dell 2, 72 and/or JEDEC 79C rendered obvious a set of the pending claims. *See* February 23, 2012 Google's Response.

33.     The Examiner then adopted additional grounds for rejection and maintained certain earlier rejections. *See* November 13, 2012 Non-Final Action. Netlist responded by canceling certain claims, further amending other claims, and arguing against the rejections. *See* January 14, 2013 Netlist's Response After Non-Final Action. Google again explained why various combinations of Micron Art, Amidi, Dell 2, and JEDEC 79C (among other references) rendered the claims obvious. *See* February 13, 2013 Google's Response.

34.     The Examiner issued an Action Closing Prosecution, which maintained several rejections, withdrew others, and found certain rejections moot due to Netlist canceling certain claims. *See* March 21, 2014 Action Closing Prosecution. The Examiner issued a Right of Appeal Notice, and Google appealed the Examiner's unadopted portions of certain grounds. *See* July 18, 2014 Google's Notice of Appeal. Netlist cross-appealed on the grounds of rejection the Examiner maintained. *See* July 30, 2014 Netlist's Notice of Cross Appeal.

35.     The PTAB, in its first appeal decision, affirmed the Examiner's adoption of certain aspects of the ground involving Micron Art in view of Amidi, reversed the Examiner's refusal to adopt other aspects of this ground, reversed the Examiner's refusal to adopt the ground involving

Micron Art in view of Amidi and Olarig, and declined to reach the merits on the ground involving Micron Art in view of Amidi, Dell 2, and JEDEC 79C. *See* June 6, 2016 Decision on Appeal.

36.     Netlist then requested that the PTO reopen prosecution, canceling certain claims and amending most of the remaining claims. *See* July 31, 2016 Netlist's Response Requesting to Reopen Prosecution.) It was in this set of amendments in which Netlist amended claim 1 and several other claims to include the following language:

- "wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register" ("PLL device limitation");

- "wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices" ("register limitation"); and

- "wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal." ("logic element limitation").

37.     Netlist asserted that these three amendments were "principal amendments to overcome the new grounds of rejection" and further stated that "[t]o address the Board's rejection, Patent Owner ***narrowed*** the claim to include" the above identified three amendments. *Id*. (emphasis added). Netlist then referenced the above identified "claim amendments [to] highlight

at least two differences between the '912 invention and the prior art." *Id*. Below are the two

differences that Netlist highlighted to the PTAB:

> First, the claim amendments now require: In response to signals received from the computer system, the phaselock loop (PLL) device transmit a PLL clock to the plurality of DDR memory devices, the logic element, and the register. Amidi transmits a PLL clock signal to the register and memory, but not the CPLD. Thus, Amidi does not disclose the PLL device transmitting the PLL clock to the logic element; the output of PLL 606 is neither directly nor indirectly transmitted to the CPLD 604. Additionally, a POSITA would not be motivated or inclined to transmit the PLL clock to CPLD 604.
>
> Second, the amended claims now also require that the logic element generates certain output signals (e.g., gated column access strobe (CAS) signals or chip-select signals recited in claim 1) in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal. Amidi's CPLD 604 never receives bank address signals and hence Amidi's control signals cannot be generated based on bank 74 address signals. Instead, the control signals (rcs0a, rcs0b, rcs1a, rcs1b, rcs2a, rcs2b, rcs3a, and rcs3b) are based on the row address signals and chip-select signals. Thus, Amidi does not disclose the CPLD generating the gated CAS signals or chip-select signals in response to ***the bank address signals***. Moreover, since the output of PLL 606 is neither directly nor indirectly transmitted to the CPLD 604, a POSITA would understand that the PLL clock does not control the operation of CPLD 604. Thus, Amidi is further deficient by failing to disclose the CPLD generating the gated CAS signals or chip-selected signals in response to the ***PLL clock signal***.

*Id*. (emphasis in original) (internal citations omitted).

38.     Netlist went on to further explain how the specific amendments above were the

distinguishing factors over Amidi:

> As amended, the claims require that the ***logic element receives*** at least one row address signal and ***bank address signals***, and require that the ***register*** (i) ***receives***, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and ***the bank address signals***, and (iii) transmit the buffered plurality of DDR memory devices. The claims also require the plurality of row/column address signals received by the register are separate from the at least one row address signal received by the logic element. In other words, in the confirmation recited by the claims, the bank address signals are received by the logic element,

23

the register and the plurality of memory devices. Under such circumstances, Amidi does not use bank address signals to generate control signals (and certainly not the bank address signals and the at least one row address signal.) The claims, however, require generating CAS signals or chip-select signals based on a row address signal and bank address signals.

Based on the above, it would not be obvious to a POSITA to combine Amidi and Dell 2 to reach the claimed invention, as amended. For the sake of argument, however, even the proposed combination of Amidi and Dell 2 fails to disclose the claimed invention. Therefore, even in combination, Amidi in view of Dell 2 fails to disclose all of the claim recitations of the claims.

*Id*. (emphasis in original) (internal citations omitted).

39.    Following Google's response to Netlist's amendments and response, the PTAB remanded the case to the Examiner and the Examiner maintained the PTAB's new grounds 75 of rejection as well as one additional ground. *See* October 3, 2017 Examiner's Determination Under 37 C.F.R. § 41.77(d).

40.    The PTAB then issued its second appeal decision, affirming several prior rejections but withdrawing many of the rejections the PTAB and the Examiner had previously maintained. *See* July 27, 2018 Decision on Appeal. The withdrawn rejections corresponded to the combination of Micron Art in view of Amidi and Micron Art in view of Amidi and Olarig. *Id*. Google sought rehearing, which the PTAB denied. *See* January 31, 2019 Decision on Rehearing. Google then appealed the PTAB's decision to the Federal Circuit.

41.    In its responsive appeal brief to the Federal Circuit, Netlist repeatedly stated that "it ***narrowed*** its claims to define its precise inventive contributions over the prior art." December 12, 2019 Netlist Response Brief (emphasis added). Therefore, in statements to the PTAB and the Federal Circuit, Netlist reiterated that the amendments identified above are narrowing, and that it was these narrowing amendments that were Netlist's basis for arguing that the prior art at issue does not disclose the asserted claims. It was in response to these statements that the PTAB

24

withdrew its rejections of the asserted claims and the Federal Circuit affirmed the PTAB's decision on June 15, 2020.

42.     The *Inter Partes* Reexamination Certification for the '912 patent issued on February 8, 2021.

**After the Claims Issued with the Narrowing Amendments, Netlist Argued in Litigation that the Amendments Did Not Change the Scope of the Claims**

43.     After the *Inter Partes* Reexamination Certification for the '912 patent issued on February 8, 2021, Netlist resumed its litigation against Google.

44.     On information and belief, Gail Sasaki is involved in overseeing Netlist's litigation against Google.

45.     On July 30, 2021, Google filed a Motion for Summary Judgment on the Issue of Absolute Intervening Rights. *See* Netlist, Inc. v. Google LLC, No. 4:09-cv-05718-SBA, D.I. 155.

46.     On September 3, 2021, Netlist filed its Opposition to Google's Motion for Summary Judgement on the Issue of Absolute Intervening Rights. *See id.*, D.I. 196. In the opposition, Netlist argued, in direct contradiction to what it argued to the PTAB and the Federal Circuit during reexamination proceedings, that the above identified claim amendments were not narrowing. Instead, Netlist now argues that "the language added during reexamination clarified what was inherent in the original claims." D.I. 196 at 17; *see also id.* at 16–24.

47.     If the above identified amendments were in fact inherent, as Netlist now contends to overcome intervening rights, then Netlist knowingly misled the PTAB and the Federal Circuit when it distinguished the amended claims from the prior art during reexamination.

48.     Had the PTAB and the Federal Circuit known that the amendments were in fact not "narrowing" but instead just "made express the inherent functions of the [original limitation]," the

PTAB and the Federal Circuit would have found these claims obvious and not allowed them to issue. For example, if the newly added functions were inherent in the original claim limitation, as Netlist now contends, these functions also would have been inherent in the prior art, thus rendering the claims obvious and invalid.

49.     On information and belief, Netlist Individuals Substantively Involved in the '912 Patent Reexamination knowingly misrepresented the amendments in its arguments to the PTAB and the Federal Circuit. Netlist Individuals Substantively Involved in the '912 Patent Reexamination had a duty of candor and good faith in dealing with the PTAB and the Federal Circuit during reexamination of the '912 patent. That duty of candor and good faith included a duty to disclose to the PTAB and the Federal Circuit its intention not to narrow the claims at all in order to distinguish the prior art. Instead, Netlist Individuals Substantively Involved in the '912 Patent Reexamination chose to tell both the PTAB and the Federal Circuit the opposite to convince the PTAB and the Federal Circuit to allow the claims. This information is material to the patentability of the claims. By misrepresenting the intended effect of the above identified amendments to the claims to the PTAB and the Federal Circuit, Netlist Individuals Substantively Involved in the '912 Patent Reexamination breached its duty of candor and good faith and showed specific intent to deceive the PTAB and the Federal Circuit.

50.     Inequitable Conduct: Any one or more acts set forth above are sufficient in and of itself/themselves to demonstrate that Netlist committed inequitable conduct during the reexamination of the '912 patent that renders the '912 patent unenforceable.

51.     Unclean Hands: Furthermore, any one or more acts set forth above are sufficient in and of itself/themselves to demonstrate that Netlist has unclean hands in relation to its assertion of

the '912 patent that renders the '912 patent unenforceable.

## SEVENTEENTH AFFIRMATIVE DEFENSE – 28 U.S.C. § 1498

52.     Netlist's recovery for alleged infringement of the Asserted Patents, if any, is limited pursuant to 28 U.S.C. § 1498 to the extent that any alleged infringement, in whole or part, is attributable to the United States government.

## EIGHTEENTH AFFIRMATIVE DEFENSE – BREACH OF RAND LICENSING OBLIGATION

53.     Netlist's claims for injunctive relief are barred, in whole or in part, because of its failure to offer Micron a license to various of the Asserted Patents on reasonable terms and conditions that are demonstrably free of unfair discrimination (i.e., "RAND terms").

54.     Netlist is presently a member of JEDEC.  Netlist committed various of the Asserted Patents to various JEDEC standards pursuant to the JEDEC Patent Policy, which sets certain obligations for owners of patents (like the Asserted Patents) that it reasonably believes are essential to one or more JEDEC standards.  The JEDEC Patent Policy, as set forth in the JEDEC Manual of Organization and Procedure, states in relevant part that "[a] license will be offered, to applicants desiring to utilize the license for the purpose of implementing the JEDEC Standard under reasonable terms and conditions that are free of any unfair discrimination . . .."

55.     Netlist has asserted that various of the Asserted Patents must be practiced to implement standards relating to memory technologies promulgated by the leading standard-setting organization in the memory technology field, JEDEC.  Netlist therefore asserts that various of the Asserted Patents are "essential" to the implementation of the JEDEC standards in question (such allegedly standard "essential" patents are referred to herein as "SEPs").  JEDEC's semiconductor memory standards enable interoperability—that is, the ability of memory products made by different manufacturers to work together and with computer and electronic devices made by others.

JEDEC standards are widely implemented and, for many types of semiconductor memory products, it is imperative that they comply with JEDEC standards in order to be commercially viable.

56.     Netlist has participated in the development of standards relating to memory technologies in JEDEC.  Pursuant to JEDEC's Patent Policy, Netlist submitted a "License Assurance/Disclosure Form" applicable to various of the Asserted Patents pursuant to which it has (a) disclosed each of those patents, or patents claiming priority to the same filing as various of the Asserted Patents, to be potentially essential to certain JEDEC standards and (b) committed to offer to license any claim of various of the Asserted Patents that is essential to the implementation of relevant JEDEC standards to those wishing to implement those JEDEC standards on RAND terms.

57.     Moreover, pursuant to the JEDEC Patent Policy, which is binding upon Netlist, simply by virtue of its membership on the committees that developed the standards to which Netlist asserts the claims of various of the Asserted Patents are essential, Netlist is obligated to offer to license those claims to all potential licensees like Micron on RAND terms.

58.     Netlist has breached its obligations to offer to license various of the Asserted Patents on RAND terms by, among other things: (a) failing to offer to license its SEPs to Micron on terms that are reasonable and (b) seeking injunctive relief against Micron based upon its alleged infringement of various of the Asserted Patents despite Micron's willingness to engage in discussions about licensing any claim shown to be valid and infringed on RAND terms.  To date, and despite Micron's attempts to obtain such a showing, Netlist has failed to show that any asserted claim is valid and infringed.

## <u>RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES</u>

Micron reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses at law or in equity that

may exist now or that may be available in the future based on discovery and further factual investigation in this action.

Dated: September 7, 2022

Respectfully submitted,

By:   /s/ Natalie Arbaugh
        Thomas M. Melsheimer
        State Bar No. 13922550
        TMelsheimer@winston.com
        Natalie Arbaugh
        State Bar No. 24033378
        NArbaugh@winston.com
        WINSTON & STRAWN LLP
        2121 N. Pearl Street, Suite 900
        Dallas, TX 75201
        Telephone: (214) 453-6500
        Facsimile: (214) 453-6400

        Michael R. Rueckheim
        State Bar No. 24081129
        MRueckheim@winston.com
        WINSTON & STRAWN LLP
        255 Shoreline Drive, Ste 520
        Redwood City, CA 9405
        Telephone: (650) 858-6500
        Facsimile: (650) 858-6559

        David Enzminger
        Pro Hac Vice Pending
        DEnzminger@winston.com
        WINSTON & STRAWN LLP
        333 S. Grand Avenue
        Los Angeles, CA 90071-1543
        Telephone: (213) 615-1700
        Facsimile: (213) 615-1750

        Matthew Hopkins
        Pro Hac Vice Pending
        mhopkins@winston.com
        WINSTON & STRAWN LLP
        1901 L Street, NW

29

Washington, DC 20036
Telephone: (202) 282-5862
Facsimile: (202) 282-5100

William Logan
State Bar No. 24106214
WLogan@Winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Juan Yaquian
State Bar No. 24110559
*Pro Hac Vice Pending*
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

**ATTORNEYS FOR MICRON
TECHNOLOGY, INC., MICRON
SEMICONDUCTOR PRODUCTS, INC.,
MICRON TECHNOLOGY TEXAS LLC**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 7, 2022, the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record, including counsel for Plaintiff, Netlist, Inc.

*/s/ Natalie Arbaugh*
Natalie Arbaugh
