**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| NETLIST, INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 2:22-cv-294-JRG |
| | ) |
| MICRON TECHNOLOGY, INC.; | ) JURY TRIAL DEMANDED |
| MICRON SEMICONDUCTOR | ) |
| PRODUCTS, INC.; MICRON | ) |
| TECHNOLOGY TEXAS LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF NETLIST, INC.'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY (DKT. 21)**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................................. 1

II.  FACTUAL BACKGROUND .......................................................................................... 2

    A.   The EDTX Actions against Samsung and Micron Involve the Same Patents ........... 2

    B.   The WDTX Actions Involving Different Patents-in-Suit Are Stayed Indefinitely Upon Micron's Request ............................................................................................ 3

    C.   The WDTX Actions and this Case Represent Separate Causes of Action ................ 4

        1.   The '912 Patent Is Different from the WDTX Patents ................................... 4

        2.   The '215 and '417 Patents Are Different from WDTX Patents ..................... 5

III. ARGUMENT .................................................................................................................... 6

    A.   The First-to-File Rule Does Not Apply ..................................................................... 6

        1.   The EDTX II Patents Have Not Been Pled in the WDTX Actions ............... 6

        2.   Micron Should Not Be Allowed to Add Counterclaims of Non-infringement, Invalidity, or Unenforceability in WDTX When It Has Chosen Not to Make Such Compulsory Counterclaims in EDTX .... 6

        3.   No Substantial Overlap Exists between Micron II and WDTX Actions ...... 7

            (a)   Micron II and the WDTX Actions Involve Distinct Issues .............. 8

            (b)   Micron Cannot Demonstrate Substantial Overlap ........................... 10

        4.   Compelling Circumstances Make the First-to-File Rule Inappropriate ....... 11

    B.   Micron Cannot Meet the Traditional Standards for a Stay .......................................... 13

IV.  CONCLUSION ............................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re ASM Int'l, N.V.*,
    774 F. App'x 650 (Fed. Cir. 2019) ...................................................................................... 7, 8

*Aventis Pharms. Inc. v. Teva Pharms USA Inc.*,
    No. 06-cv-469, 2007 WL 2823296 (E.D. Tex. Sept. 27, 2007) ..................................... 10, 11

*Document Generation Corp. v. Allscripts, LLC*,
    No. 08-CV-479, 2009 WL 2824741 (E.D. Tex. Aug. 27, 2009) ............................... 9, 10, 12

*In re Echostar Corp*,
    388 F. App'x 994 (Fed. Cir. 2010) ............................................................................................ 12

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
    No. 16-cv-618, 2017 WL 365398 (E.D. Tex. Jan. 25, 2017) ............................................... 11

*Google LLC v. Netlist, Inc.*,
    810 F. App'x 902 (Fed. Cir. 2020) ......................................................................................... 2, 9

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
    No. 07-cv-6222, 2008 WL 1991094 (N.D. Cal. May 5, 2008) ............................................. 10

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*,
    No. 08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ........................................ 2, 12

*Leap Wireless Int'l, Inc. v. MetroPCS Commc'ns, Inc.*,
    No. 06-cv-240, 2007 WL 541428 (E.D. Tex. Feb. 15, 2007) ................................................. 6

*LifeNet, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    No. 22-cv-162, 2022 WL 2959715 (E.D. Tex. July 26, 2022) ................................................ 6

*Medimmune LLC v. PDL BioPharma, Inc.*,
    No. 08-cv-5590, 2009 WL 1011519 (N.D. Cal. Apr. 14, 2009) ........................................... 12

*Parthenon Unified Memory Architecture LLC v. HTC Corp.*,
    No. 14-cv-690, 2016 WL 3365855 (E.D. Tex. June 17, 2016) ............................................ 14

*Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc.*,
    347 F.3d 935 (Fed. Cir. 2003) ............................................................................................... 7, 11

*Rembrandt Wireless Techs., LP v. Apple Inc.*,
    No. 19-cv-25-JRG, 2019 WL 6344471 (E.D. Tex. Nov. 27, 2019) ..................................... 13

*RPost Holdings, Inc. v. Readnotify.com Pty Ltd.*,
   No. 11-cv-16-JRG, 2012 WL 2524237 (E.D. Tex. June 29, 2012) ..................................... 14

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
   No. 15-cv-349, 2017 WL 3396399 (E.D. Tex. Jan. 17, 2017) ....................................... 2, 14

*Samsung Elec. Co., Ltd. v. Netlist, Inc.*,
   No. 21-cv-1453 (D. Del.) ................................................................................................. 10

*Save Power Ltd. v. Syntek Fin. Corp.*,
   121 F.3d 947 (5th Cir. 1997) ........................................................................................... 11

*Swetra v. DirecTV, LLC*,
   No. 15-cv-8761, 2016 WL 4208440 (D.N.J. Aug. 9, 2016) ............................................. 12

*Swimways Corp. v. Zuru, Inc.*,
   No. 13-cv-334, 2014 WL 12603190 (E.D. Va. June 6, 2014) ........................................... 7

*In re Telebrands Corp.*,
   773 F. App'x 600 (Fed. Cir. 2016) ........................................................................... 6, 8, 11

*Virtual Fleet Mgmt., LLC v. Position Logic, LLC*,
   No. 17-cv-14, 2017 WL 10276708 (E.D. Tex. May 17, 2017) .......................................... 8

*Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999) ............................................................................................ 7

*Wellogix Tech. Licensing LLC v. Automatic Data Processing, Inc.*,
   No. 11-cv-401, 2013 WL 1729606 (E.D. Tex. Mar. 19, 2013) ........................................ 12

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................................... 3

**Rules**

Fed. R. Civ. P. 13(a) ................................................................................................................. 6, 7

**Other Authorities**

6 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1410 (2d ed. 1990) ............................ 7

**I. INTRODUCTION**

Netlist has brought the same claims against Samsung[1] and Micron[2] in this Court on U.S. Patent Nos. 10,860,506 (the "'506 patent"); 10,949,339 (the "'339 patent"); 11,016,918 (the "'918 patent"); 11,232,054 (the "'054 patent); 8,787,060 (the "'060 patent"); and 9,318,160 (the "'160 patent") (collectively the "EDTX I Patents") and U.S. Patent Nos. 7,619,912 (the "'912 patent"); 11,093,417 (the "'417 patent"); and 9,858,215 (the "'215 patent") (collectively "EDTX II Patents"). Micron seeks to stay these cases against it in this Court, and effectively combine them with a case in Austin that is indefinitely stayed. For reasons stated below, this Court is the appropriate forum to adjudicate the EDTX I and II Patents.[3]

Micron contends that actions Netlist filed in the Western District of Texas are the first filed actions. *Netlist, Inc. v. Micron Tech., Inc. et. al.*, Nos. 22-cv-134 and 22-cv-136 (W.D. Tex. Apr. 28. 2021) ("WDTX Actions"). But the WDTX Actions involve a completely different set of patents: U.S. Patent Nos. 8,301,833 (the "'833 patent"); 9,824,035 (the "'035 patent"); 10,268,608 (the '608 patent); and 10,489,314 (the "'314 patent) (collectively "WDTX Patents").

At Micron's request, the WDTX Actions have been stayed indefinitely pending the outcome of IPR proceedings on the WDTX Patents, including appeal to the Federal Circuit. Ex. 1 (order granting motions to stay case pending IPRs). Seeking to evade this Court's jurisdiction, Micron filed a motion to temporarily lift the stay in only one of the WDTX Actions (No. 22-cv-136) so that it may seek to assert counterclaims there directed to all three of the EDTX II Patents and four of the EDTX I Patents (the '506, '339, '918, and '054 patents). The WDTX court has not lifted the stay, much less

---

[1] *Netlist, Inc. v. Samsung Elec. Co., Ltd., et. al.*, No. 21-cv- 463-JRG (E.D. Tex. ) ("Samsung I"); No. 22-cv-293-JRG (E.D. Tex.) ("Samsung II").

[2] *Netlist, Inc. v. Micron Tech., Inc. et. al.*, No. 22-cv-203-JRG (E. D. Tex.) ("Micron I"); No. 22-cv-294-JRG (E.D. Tex.) ("Micron II").

[3] Netlist addressed all of Micron's misguided arguments in its opposition to Micron's motion in *Micron I*, Dkt. 26.

allowed Micron leave to add its proposed counterclaims. Ex. 4 (docket, No. 22-cv-136).

The first-to-file rule does not apply here because Micron has not been allowed to add the EDTX II Patents to either of the WDTX Actions. Micron also fails to demonstrate a substantial overlap between this case and the WDTX Actions. The EDTX II Patents and the WDTX Patents cover different technologies, require construction of different terms, involve different products, and raise different affirmative defenses. The USPTO instituted IPRs on some of the WDTX Patents; but no IPR has been instituted on any of the EDTX II Patents. Instead, the '912 patent has been confirmed valid by the Federal Circuit after a decade-long reexamination. *Google LLC v. Netlist, Inc.*, 810 F. App'x 902 (Fed. Cir. 2020).

Further, the first-to-file rule does not apply here because there is no risk of duplication of work by this Court and the WDTX court, as the WDTX Actions are indefinitely stayed until after the resolution of the IPRs and any related appeals. *See J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. 08-cv-211, 2008 WL 5378010, at *6 (E.D. Tex. Dec. 23, 2008) ("Because the [related actions] are currently stayed, and could continue to be stayed for an extended period of time, there is little risk of parallel competing claim constructions."). Micron also fails to show that a stay could simplify any issues in this case. Instead, an indefinite stay of this case and *de facto* transfer to the indefinitely-stayed WDTX Actions would cause significant delay and prejudice to Netlist. *See Saint Lawrence Commc'ns LLC v. ZTE Corp.*, No. 15-cv-349, 2017 WL 3396399, at *2 (E.D. Tex. Jan. 17, 2017) (a stay would cause undue prejudice to the patentee's legitimate right "to timely enforcement of its patent rights").

## II.     FACTUAL BACKGROUND

### A.     The EDTX Actions against Samsung and Micron Involve the Same Patents

Netlist has brought two cases in this District against certain Samsung entities, Samsung I and Samsung II, involving respectively the EDTX I and EDTX II Patents. Samsung I is scheduled for a *Markman* hearing on November 4, 2022 and it is set for trial starting on May 1, 2023.

In parallel with Samsung I and Samsung II, Netlist has brought two actions against Micron on the same patents: Micron I (asserting the EDTX I Patents) and Micron II (asserting the EDTX II Patents). The Micron lawsuits are in this District because Micron, like Samsung, also has operations in this judicial District. Ex. 2 (Micron job posting for DRAM Design Engineer in Allen, TX). Micron filed answers in both actions, asserting only defenses, but not any compulsory counterclaims of non-infringement, invalidity, or unenforceability. Micron does not dispute that venue in this District is proper and convenient.

### B. The WDTX Actions Involving Different Patents-in-Suit Are Stayed Indefinitely Upon Micron's Request

In April 2021, Netlist filed two complaints against Micron in the Western District of Texas, alleging infringement of the four WDTX Patents. *Netlist, Inc. v. Micron Tech., Inc.*, Nos. 22-cv-134 and No. 22-cv-136. In response to Micron's motion for transfer under 28 U.S.C. § 1404(a) (*id.* Dkt. 32), Netlist agreed to transfer the cases to the Austin division (*id.* Dkt. 43).

Micron subsequently filed IPR petitions as to each of the WDTX Patents. IPR2022-418 (the '833 patent); IPR2022-236 (the '035 patent); IPR2022-237 (the '608 patent); and IPR2022-00745 & 2022-744 (both for the '314 patent).[4] On April 1, 2022, Micron moved to stay the WDTX Actions pending these petitions. *Netlist, Inc. v. Micron Tech., Inc.*, Nos. 22-cv-134 and 22-cv-136, Dkt. 59. The Western District court granted Micron's motion to stay on May 11, 2022, which remains in place as of today. Ex. 1 (No. 22-cv-134, Dkt. 68; No. 22-cv-136, Dkt. 69).

Despite the stay, on September 2, 2022, Micron sought leave to add permissive counterclaims such as non-infringement, invalidity, and unenforceability of the EDTX II Patents, along with four

---

[4] The USPTO instituted IPRs on the '035 and '833 patents on July 19 and September 1, 2022 respectively, but denied to institute the IRP as to the '608 patent. No decision has been issued as to the '314 patents. The deadline for USPTO's final written decision on the instituted IPRs would be July 19 and September 1, 2023. And the deadline for the USPTO to decide whether to institute the IPR proceedings on the '314 patents is November 3, 2022.

EDTX I Patents, in one of the stayed WDTX Actions, even though Micron has chosen to waive asserting the identical compulsory counterclaims in Micron I and Micron II. Ex. 3 (Motion to lift the Stay and Amend, Netlist, Inc. v. Micron Tech., Inc., No. 22-cv-134, (W.D. Tex.) Dkt. 72). The WDTX court has not agreed to lift the stay, much less to grant Micron leave to amend its counterclaims.

### C. The WDTX Actions and this Case Represent Separate Causes of Action

#### 1. The '912 Patent Is Different from the WDTX Patents

Netlist's '912 patent issued in November 2009, and covers the "rank multiplication" memory module technology. Rank multiplication technology allows a memory module with 2n (*e.g.*, 4) ranks of memory to present itself as an *n*-ranked module. This overcomes the limitation of a host system that can only generate *n* chip select signals (*i.e.*, can only select *n* ranks of memory devices). Dkt. 1 ¶ 22. Rank multiplication technology enables memory designers to expand the number of memory devices on a module and correspondingly, the total memory capacity on a memory module. It also enables memory modules of a given capacity to be constructed using memory devices with lower density, which typically cost less. *Id.* ¶ 23.

Despite Micron's contention that the "'912 patent claims priority to the same provisional and non-provisional applications as the '314 patent," Mtn. at 7, the two involve very different technologies. The '912 patent provides a method to achieve rank multiplication through the operation of the registering clock driver ("RCD") on a memory module. An RCD is a controller on the memory module that receives control/address/clock signals from the host and outputs registered control/address /clock signals to Dynamic Random Access Memory ("DRAM") devices. Claim 16 of the '912 patent, the sole claim at issue in Samsung's IPR petition, reads on rank multiplied DIMMs with features relating to the per-DRAM addressability technology ("PDA") utilized in DDR4 memory modules. The '314 patent at issue in WDTX, instead, is directed to the operation of distributed data buffers in LRDIMMs. Specifically, the '314 patent relates to regulating the timing of data bursts and

data strobe signals sent via data buffer circuitries "at specified data rate[s]" in response to a command from the host. *See* Ex. 7 ('314 patent), cl. 1.

Further, the '912 and '314 patents require construction of different claim terms. Before the WDTX Actions were stayed, Netlist and Micron only asked the court to construe the following terms of the '314 patent: "the burst of data strobes"; "logic . . . configured to . . ."[5]; "overall CAS latency"/"actual operational CAS latency"; and "circuitry . . . configured to"[6]. Ex. 6 (Dkt. 66-1 of WDTX Action 22-cv-136); Ex. 5 at 19-30 (Dkt. 41, Micron's claim construction brief). These terms are not in the claims of the '912 patent, and therefore, there is no overlap in claim construction. *See* Dkt. 1-1 ('912 patent).

## 2. The '215 and '417 Patents Are Different from WDTX Patents

The '215 and '417 patents (EDTX) and the '314 patent (WDTX) are technically distinct. There are no terminal disclaimers filed among the patents, indicating that the examiner did not consider the claims patentably indistinct. In contrast to the '314 patent, neither the '215 nor the '417 requires a first or second "burst of data strobes," much less respective bursts of data strobes that are transferred at a specified data rate.[7] Further, unlike the WDTX Patents, the '215 and '417 patents are not subject to any pending or instituted IPR petitions.

---

[5] Claims 1, 15, 25.

[6] Claims 1, 5, 25, 28.

[7] The '215 patent is directed to a memory module featuring on-buffer logic configured to respond to a first or second memory command by providing first or second "control signals to the buffer to enable communication of the first [or second] data burst" associated with each respective command. *See* '215, cl. 1. The '417 patent claims similarly recite on-buffer "circuitry … configurable to transfer" a burst of N-bit wide data signals between the N-bit wide memory bus the memory devices in the one of the plurality of N-bit wide ranks "in response to the data buffer control signals." *See* '417, cl. 1.

- 5 -

### III.     ARGUMENT

#### A.     The First-to-File Rule Does Not Apply

The first-to-file rule applies "when two cases are the same or very similar," where the "efficiency concerns dictate that only one court decide both cases." *In re Telebrands Corp.*, 773 F. App'x 600, 602 (Fed. Cir. 2016). It is a "'discretionary doctrine' based on 'principles of comity and sound judicial administration.'" *LifeNet, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 22-cv-162, 2022 WL 2959715, at *4 (E.D. Tex. July 26, 2022).

##### 1.     The EDTX II Patents Have Not Been Pled in the WDTX Actions

Netlist did not raise the EDTX II Patents in the WDTX Actions, which are stayed. Ex. 4 (22-cv-134, Dkt. 68; 22-cv-136, Dkt. 69). Despite Micron's recent motion to lift the stay temporarily to file amended counterclaims to assert the EDTX II patents, the WDTX court has not granted that request. Exs. 5 (Dkt. 72), 10 (72-1). Thus, EDTX II Patents are not "filed," let alone "first filed" in the WDTX Actions.

##### 2.     Micron Should Not Be Allowed to Add Counterclaims of Non-infringement, Invalidity, or Unenforceability in WDTX When It Has Chosen Not to Make Such Compulsory Counterclaims in EDTX

Micron filed its answer to this Action on September 7, 2022, which raised no counterclaims for declaratory judgment of noninfringement, invalidity, or unenforceability of the EDTX II Patents. Dkt. 15. These noninfringement and invalidity counterclaims are "compulsory" because they "arise[] out of the transaction or occurrence that is the subject matter of" Netlist's patent infringement claims. Fed. R. Civ. P. 13(a); *see also Leap Wireless Int'l, Inc. v. MetroPCS Commc'ns, Inc.*, No. 06-cv-240, 2007 WL 541428, at *4 (E.D. Tex. Feb. 15, 2007) (defendants' counterclaim for patent invalidity is compulsory); *Swimways Corp. v. Zuru, Inc.*, No. 13-cv-334, 2014 WL 12603190, at *1 (E.D. Va. June 6, 2014) (Zuru's "counterclaim alleging patent invalidity and non-infringement, involving the same patents at issue in the Plaintiff's Complaint . . . is considered compulsory"); 6 C. Wright, A. Miller & M. Kane, Fed. Prac.

& Proc. § 1410, at 73 (2d ed. 1990) ("Any counterclaim involving the same patent as involved in the original action usually is considered to arise from the same transaction as the main claim."); *cf. Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc.,* 347 F.3d 935, 938 (Fed. Cir. 2003) ("Rule 13(a) makes an infringement counterclaim to a declaratory judgment action for noninfringement compulsory"); *Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.,* 200 F.3d 795, 802 (Fed. Cir. 1999) ("[W]hen the same patent is at issue in an action for declaration of non-infringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived.").

Micron has thus waived its counterclaims for noninfringement, invalidity, and unenforceability as to these EDTX II Patents and should not be allowed to assert them now in the WDTX Actions as permissive counterclaims. *Polymer Indus.*, 347 F.3d at 938 ("[A] party that does not assert its compulsory counterclaim in the first proceeding has waived its right to bring the counterclaim and is forever barred from asserting that claim in future litigation."); *Vivid Tech.*, 200 F.3d at 802 (same).

### 3. No Substantial Overlap Exists between Micron II and the WDTX Actions

The first-to-file rule does not apply because Micron cannot show a substantial overlap between this Action and the WDTX proceedings. Neither can Micron relate its proposed declaratory judgment claims back to the WDTX Patents. As illustrated in detail above, *supra* II-C, EDTX II Patents and WDTX Patents cover different aspects of memory technologies, are asserted against different accused products, require construction of different terms, and involve different damages analysis. The risk of duplication of work by this Court and the WDTX court, if any, is minimal. *See In re ASM Int'l, N.V.*, 774 F. App'x 650, 652 (Fed. Cir. 2019) (affirming the district court's decision denying to apply the first-to-file rule where the second-filed case "involves different asserted patents, claim terms, and technology than are at issue" in the first action); *Cf. Virtual Fleet Mgmt., LLC v. Position Logic, LLC*, No. 17-cv-14, 2017 WL 10276708, at *2 (E.D. Tex. May 17, 2017) (transferring to a parallel litigation involving the identical patent and claims).

### (a) Micron II and the WDTX Actions Involve Distinct Issues

Substantial differences exist between the '912 patent and the WDTX Patents. **First**, as detailed in *supra* Section II-C-1, the '912 patent addresses the unique rank multiplication technologies not required by the WDTX Patents. Netlist and Micron have asked the court in the WDTX Actions to construe the terms "the burst of data strobes"; "logic . . . configured to . . ."; "overall CAS latency"/"actual operational CAS latency"; and "circuitry . . . configured to" for the '314 patent, which terms are not recited by, and need not be construed for, the '912 patent. *Compare* Ex. 6 (Ex. A to claim construction statement in WDTX) *with* Dkt. 1-1 (the '912 pat). In addition, Netlist accused Micron's DDR4 RDIMMs of infringement of the '912 patent in this District, which are not at issue in the WDTX Actions. Dkt. 11 ¶ 37. These differences require separate decisions on claim construction, infringement, and damages. *See In re ASM Int'l, N.V.*, 774 F. App'x at 652 (affirming the district court's decision denying to apply the first-to-file rule). Although Netlist asserted both the '912 and '314 patents against Micron's DDR4 LRDIMMs, that fact alone is not determinative because these patents cover different aspects of the memory module technologies, thus the infringement analysis and damages calculation would also be different. *See id.* (no precedent "support[s] the position that one court must hear all forms of intellectual property misappropriation of an accused product"); *In re Telebrands Corp.*, 773 F. App'x at 603-04 (same).

**Second**, Micron's answer to this Action raised the affirmative defense of "laches, inequitable conduct, and unclean hands" in connection with the '912 patent. *See* Dkt. 15 ¶¶ 18-52. Specifically, Micron alleges that Netlist made conflicting interpretations of the scope of the claims before the USPTO and in a district court litigation between Netlist and a third party. *Id.* This defense is unique to the '912 patent and has nothing to do with the WDTX Patents.

**Third**, unlike the WDTX Patents, which are subject to instituted or pending IPR petitions, the '912 patent went through a decade-long reexamination proceeding and was confirmed valid by the

USPTO twice and then by the Federal Circuit. *Google*, 810 F. App'x 902. Relatedly, Micron raised a separate affirmative defense to the '912 patent in its Micron II answer, asserting that certain claims of the '912 patent substantially changed in scope during the reexamination and therefore it is subject to an absolute and/or equitable intervening rights defense. This issue is not presented in the WDTX Actions.

The only overlap Micron identified between the '912 patent and the WDTX Patents is that the "'912 patent claims priority to the same provisional and non-provisional applications as the '314 patent." Mtn. at 7. However, as courts in this district made clear, the fact that patents share the same provisional application (or belong to the same family) alone is not enough to show substantial overlap for purposes of the first-to-file rule. *See Document Generation Corp. v. Allscripts, LLC*, No. 08-CV-479, 2009 WL 2824741, at *1-2 (E.D. Tex. Aug. 27, 2009) (refusing to "chain Plaintiff to S.D. Illinois whenever it asserted a patent in the same family as the '366 Patent").

The '215 and '417 patents are also technically distinct from the '314 patent at issue in the WDTX Action. There are no terminal disclaimers filed among the patents, indicating that the Office did not consider the claims patentably indistinct. Claim construction for these patents would also likely be different. For example, unlike the '314 patent, neither the '215 nor the '417 requires a first or second "burst of data strobes," or bursts of data strobes that are transferred at a specified data rate. *Compare* Dkt. 11-3 at 54 ('215 cl. 1) and Dkt. 11-2 at 59 ('417 cl. 1) *with* Ex. 7 at 59 ('314 cl. 1).

### (b) Micron Cannot Demonstrate Substantial Overlap

As an initial matter, Micron only compares the EDTX II Patents to the WDTX '314 Patent and argues that substantial overlap exists because both the EDTX and WDTX Actions involve "DIMM technology." Mtn. at 7.[8] Even in that limited endeavor, rather than addressing the similarities and differences in the claim language of these patents, Micron makes only a superficial comparison of

---

[8] Micron does not argue that other patents in the WDTX Actions are related to the EDTX II Patents.

the technologies disclosed by Netlist's patents:

> Substantial overlap also exists in the underlying technology at issue in both proceedings. For example, all the patents relate to the same DIMM technology. . . . both cases implicate overlapping issues of alleged infringement as the JEDEC standard underpins Netlist's allegations in both forums.

*Id.* Saying all DIMMs are the same is like saying all smartphones are the same. There are also different aspects of JEDEC standards. Indeed, when evaluating a similar argument from Samsung, Judge Andrews from the District of Delaware expressly rejected an attempt to relate all DIMM patents as substantially similar:

> Technology such as memory modules can be described with varying levels of granularity. Some descriptions are so broad as to be meaningless. Others are so technical that every patent is distinguishable. In this case, I think that Samsung's **characterization of the underlying technology as "computer memory modules" is too broad to support relation back**. As Netlist argues, "under Samsung's theory its original complaint would sweep in every patent that Netlist ever obtains relating to the memory modules."

Ex. 8 at 10 (Dkt. 37 in *Samsung Elec. Co., Ltd. v. Netlist, Inc.*, No. 21-cv-1453 (D. Del.)); *see also Halo Elecs., Inc. v. Bel Fuse Inc.*, No. 07-cv-6222, 2008 WL 1991094, at *3 (N.D. Cal. May 5, 2008).

Further, Micron's reliance on *Aventis Pharms. Inc. v. Teva Pharms USA Inc.*, No. 06-cv-469, 2007 WL 2823296 (E.D. Tex. Sept. 27, 2007) is misplaced. **First**, in *Aventis*, the accused products in both the first-filed New Jersey and the later-filed EDTX actions were <u>**identical**</u>. *Id.* Here, DDR4 RDIMMs are only asserted before this Court, but not in WDTX. **Second**, in *Aventis*, the accused infringers had already initiated a mirror-image declaratory judgment action in New Jersey, but here, the WDTX has not allowed Micron to bring in the EDTX II Patents; and indeed, it would be procedurally improper for Micron to assert these counterclaims in WDTX when it chose not to assert a compulsory counterclaim on the EDTX II patents when it answered the complaint in this Action and has hence waived the right to do so. *See Polymer Indus.*, 347 F.3d at 938. **Third**, in *Aventis*, the parties had 22 separate patent infringement suits pending in the New Jersey court. The New Jersey court had "extensive familiarity with the parties to this case, the accused product, the theories of infringement,

- 10 -

and prior art references," and had issued opinions on the merits, i.e. motion for preliminary injunction. *Aventis*, 2007 WL 2823296 at *2. Here, the WDTX court stayed the WDTX Actions before the claim construction hearing and no substantial discovery had taken place in the WDTX before the stay. Further, there are no other pending actions in the WDTX between the parties or related to Netlist's memory technologies; to the contrary, this Court is presiding over Samsung II involving the identical patents. This constitutes compelling circumstances where the first-to-file rule is inapplicable.

### 4. Compelling Circumstances Make the First-to-File Rule Inappropriate

Beyond the many deficiencies in Micron's arguments, the first-to-file rule cannot be mechanically applied. *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 16-cv-618, 2017 WL 365398, at *7 (E.D. Tex. Jan. 25, 2017). Where the two proceedings have "less overlap, the second district court has considerably more discretion." *In re Telebrands Corp.*, 773 F. App'x at 602. The "judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997) (quotation omitted). "Exceptions to the first-to-file rule are not rare, and are made when justice or expediency requires." *LifeNet*, 2022 WL 2959715, at *4 (quotation omitted).

The WDTX Actions have been stayed indefinitely. Specifically, the WDTX court granted Micron's motion to stay "pending the complete resolution, through any appeals, of the *inter partes review*." No. 22-cv-134-LY Dkt. 58; Dkt. 68. For patents subject to instituted trials, the later of the two final written decisions are due on September 1, 2023. The appeal will take another year or so at least. And when the WDTX Actions finally restart, it may be another 3 years before trial. *See, e.g.*, Ex. 9 (Judge Yeakel's average time-to-jury-trial is 2 years and 9 months). Thus, transferring or staying the Micron II patents to the WDTX Actions, which are indefinitely stayed, would significantly delay Netlist's enforcement of its rights over these patents.

Because of the stay, it is unlikely that any duplication of work or inconsistent rulings will arise if this instant Action proceeds. *See J2 Glob. Commc'ns, Inc.*, 2008 WL 5378010, at *6 ("Because the [related actions] are currently stayed, and could continue to be stayed for an extended period of time, there is little risk of parallel competing claim constructions."). In fact, Courts in this district have cautioned against transferring an action to a venue where the related proceedings have been stayed. *See, e.g.*, *In re Echostar Corp*, 388 F. App'x 994, 995 (Fed. Cir. 2010) (affirming the district court's denial of transfer under the first-to-file rule in part because the first-filed court has stayed the case pending IPRs, and the district court noted that "transfer could possibly result in a delay of this case because it was uncertain when the PTO reexamination proceedings would be completed"); *Document Generation Corp*, 2009 WL 2824741, at *2 (refusing to create a rule that would require all patents from the same family to be adjudicated in the same action, "particularly in light of the fact that the [first-filed] S.D. Illinois action is currently stayed"); *Wellogix Tech. Licensing LLC v. Automatic Data Processing, Inc.*, No. 11-cv-401, 2013 WL 1729606, at *9 (E.D. Tex. Mar. 19, 2013) (judicial economy and public interest factors both weighed against transferring the case to a forum where related actions were stayed pending reexamination); *Medimmune LLC v. PDL BioPharma, Inc.*, No. 08-cv-5590, 2009 WL 1011519, at *3 (N.D. Cal. Apr. 14, 2009) (finding that the concern for judicial economy does not weigh in favor of transfer where the first filed court had limited involvement with the case and proceedings were currently stayed); *Swetra v. DirecTV, LLC*, No. 15-cv-8761, 2016 WL 4208440, at *6 & n.3 (D.N.J. Aug. 9, 2016) (concluding that even if the first-filed rule applied, the case would be one of those "rare" cases where an exception to the rule was warranted, in part because the first-filed case was currently stayed pending review of an order in an appellate court, and because it would be ":unfair and potentially prejudicial" to the plaintiff to have the second-filed case stayed in favor of a first-filed case that was awaiting a decision from an appellate court).

### B. Micron Cannot Meet the Traditional Standards for a Stay

In determining whether to stay, courts consider (1) whether a stay "will unduly prejudice or present a clear tactical disadvantage to the nonmoving party," (2) whether a stay "will simplify the issues in question and trial of the case," and (3) "whether discovery is complete and whether a trial date has been set." *Rembrandt Wireless Techs., LP v. Apple Inc.*, No. 19-cv-25-JRG, 2019 WL 6344471, at *2 (E.D. Tex. Nov. 27, 2019). Micron's motion did not even include a cursory discussion of these factors—because on balance, these factors weigh against Micron's requested stay.

As discussed above, because the WDTX Actions are indefinitely stayed, and because of the technical differences between the EDTX II Patents and WDTX Patents, *supra* II.C, putting Netlist's on-going infringement claims on hold until IPRs on other patents are resolved would not simplify any issue. Thus, this factor weighs strongly against a stay.

Of equal importance, requiring Netlist to litigate the '912, '417, and '215 patents in the WDTX **after** the IPRs on other patents (and related appeals) complete **and** after the WDTX Court allows Micron to file an amended answer would only result in delay and unfair prejudice to Netlist. This is particularly concerning because there is no IPR instituted against the '912 patent, which has already gone through the decade-long reexamination and was affirmed valid by the Federal Circuit. With respect to the '417 and '215 patents, Micron (or any other third party) has not even filed a petition for IPR. Thus, Micron's motion to stay and transfer is in fact asking this Court (and the WDTX court) to stay Netlist's claims as to the '912, '417, and '215 patent indefinitely pending ongoing IPRs. This is contrary to this Court's consistent practice of denying motions to stay patent cases before the USPTO decides to institute an IPR. *See Saint Lawrence Commc'ns*, 2017 WL 3396399, at *2 (a stay would cause undue prejudice to the patentee's legitimate right "to timely enforcement of its patent rights"); *Parthenon Unified Memory Architecture LLC v. HTC Corp.*, No. 14-cv-690, 2016 WL 3365855, at *2 (E.D. Tex. June 17, 2016) (a stay would prejudice"[patentee's] right to conduct its business."); *RPost Holdings,*

*Inc. v. Readnotify.com Pty Ltd.*, No. 11-cv-16-JRG, 2012 WL 2524237, at *1 (E.D. Tex. June 29, 2012) ("A stay will prejudice Plaintiffs because it will permit Defendants to continue to use the intellectual property in question during the elongated period cause[ed] by any stay."). This factor weighs strongly against a stay.

The WDTX Actions were stayed before claim construction and the parties' discovery was limited to venue issues. Thus, the third factor also does not favor a stay.

On balance, staying this case is not appropriate.

## IV. CONCLUSION

For the reasons discussed above, Micron's motion to stay should be denied.

Dated: September 30, 2022

Respectfully submitted,

*/s/ Jason Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

- 15 -

_____<br>
***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on September 30, 2022, a copy of the foregoing was served to all counsel of record.

<i><u>/s/ Yanan Zhao</u></i><br>
Yanan Zhao