# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:22-cv-294-JRG |
| | ) | |
| MICRON TECHNOLOGY, INC.; | ) | JURY TRIAL DEMANDED |
| MICRON SEMICONDUCTOR | ) | |
| PRODUCTS, INC.; MICRON | ) | ███████████████ |
| TECHNOLOGY TEXAS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF NETLIST INC.'S OPPOSITION TO MICRON'S OMNIBUS MOTION *IN LIMINE* (Dkt. 613)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

1.    MIL No. 1 ...............................................................................................................................1

2.    MIL No. 2 ...............................................................................................................................4

3.    MIL No. 3 ...............................................................................................................................7

4.    MIL No. 4 .............................................................................................................................10

5.    MIL No. 5 .............................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Applied Med. Resources Corp. v. U.S. Surgical Corp.*,
    435 F.3d 1356 (Fed. Cir. 2006) .................................................................................................4

*Brazos River Auth. v. GE Ionics, Inc.*,
    469 F.3d 416 (5th Cir. 2006) ....................................................................................................3

*Coleman Motor Co. v. Chrysler Corp.*,
    525 F.2d 1338 (3d Cir. 1975) ...................................................................................................6

*Function Media, L.L.C. v. Google, Inc.*,
    2010 WL 276093 (E.D. Tex. Jan. 15, 2010) ..........................................................................11

*Infernal Tech., LLC v. Sony Interactive Ent. LLC*,
    2021 WL 405813 (E.D. Tex. Feb. 3, 2021) ..........................................................................8, 9

*James v. J2 Cloud Servs. Inc.*,
    2019 WL 2304157 (C.D. Cal. May 29, 2019) .........................................................................3

*Lightfoot v. Hartford Fire Ins. Co.*,
    2012 U.S. Dist. LEXIS 31615 (E.D. La. Mar. 9, 2012) .......................................................11

*M2M Sols. LLC v. Sierra Wireless Am. Inc.*,
    2020 WL 7767639 (D. Del. Dec. 4, 2020) ..............................................................................6

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
    2017 WL 8186294 (N.D. Cal. 2017) .......................................................................................9

*Resolution Trust Corp. v. S. Union Co.*,
    985 F.2d 196 (5th Cir. 1993) ..................................................................................................11

*Samsung I. CAO Lighting, Inc. v. Gen. Elec. Co.*,
    2023 WL 1930354 (D. Del. Jan. 30, 2023) ....................................................................*passim*

*Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*,
    760 F. App'x. 977 (Fed. Cir. 2019) .................................................................................4, 5, 6

*Tempur World v. Therapedic Sleep Prods.*,
    2008 WL 11472214 (E.D. Ky. Jan. 10, 2008) .........................................................................4

*Union Pump Co. v. Centrifugal Tech. Inc.*,
    404 F. App'x 899 (5th Cir. 2010) ..........................................................................................11

**Page**

*United States v. Frazier,*
   53 F.3d 1105 (10th Cir. 1995) ........................................................................................ 2

*Weatherford Tech. Holdings, LLC v. Tesco Corp.,*
   No. 2:17-cv-456-JRG, 2018 WL 6787357 (E.D. Tex. Nov. 14, 2018) .............................. 11

**Rules**

Fed. R. Evid. 30(b)(6) ................................................................................................. 3, 11

Fed. R. Evid. 32(a)(3) ..................................................................................................... 11

Fed. R. Evid. 401 ............................................................................................................ 8

Fed. R. Evid 611 ........................................................................................................... 10

Fed. R. Evid.703 ............................................................................................................. 8

Fed. R. Evid. 803(6) ........................................................................................................ 2

Fed. R. Evid. 902(11) ...................................................................................................... 2

1.      **MIL No. 1**

Micron seeks to exclude three presentations that Netlist made to Micron, specifically: (1) in



, Dkt. 613-02, at 12, 63, 65; (2) ███████████████████████████

███████████████████████████████████████████████████ Dkt. 613-03, at

42024, 42043; and (3) █████████████

. Dkt. 613-04, at 16-27, 59-60.

These presentations are highly relevant to infringement and willfulness, including because they show

that Netlist put Micron on notice of the asserted patents and Netlist's patented technology.

In the guise of a motion *in limine*, Micron seeks to exclude this evidence based on a relevance

objection; specifically, Micron contends that Netlist cannot prove the threshold question of whether

the presentations were actually made to Micron. Mot. 1. First, Micron's motion is untimely, as it failed

to object to the portions of Netlist's expert reports ████████████████████████████

██████. *See, e.g.*, Ex. 11, ¶¶ 13, 23, 39-42, 93. Second, Netlist has already put forth sufficient evidence

to show that the above disclosures were actually made to Micron by responding to this same argument

in Micron's Motion for Summary Judgment on Pre-suit damages, Dkt. 367, at 5, Dkt. 440, at 1-6.

Micron's Reply abandoned its argument that there is insufficient evidence that these presentations

actually occurred, as Micron did not dispute the extensive evidence laid out in Netlist's opposition.

Dkt. 532. This Court should deny Micron's second attempt to rehash this same argument.

Micron's contention that there is no evidence the 2015 meetings occurred or what was presented at them is incorrect. There is contemporaneous documentary evidence the meetings occurred and that the presentations were made to Micron.[1] For example, there is an [redacted]. Ex. 1. Ms. Gail Sasaki, Netlist's CFO, submitted a sworn declaration confirming that the February 2015 presentation "was given to Micron on February 25, 2015," an sent an email in February 2015 attaching the meeting slides that were used Ex. 2 (Sasaki Decl.) at ¶ 3-4; Ex. 3 [redacted]). Likewise, Mr. Noel Whitley, [redacted] Ex. 4 at 160:18-161:5. Mr. Whitley can also testify, as he did in *Micron I*, that "[redacted] Ex. 5 (Whitley Decl.) ¶ 4. Ex. 6 (NL-MIC-203_00042083) ([redacted]).[2]

---

[1] [redacted]

[2] Micron cites no case law for its contention that [redacted] is hearsay. First, Micron's accusations of misrepresenting the [redacted] is not well taken, as [redacted] would most reasonably suggest he was a Netlist employee. Second, even if [redacted] was an outside consultant, this communication would still constitute a business record under Rules 803(6) and 902(11). *United States v. Frazier*, 53 F.3d 1105, 1110 (10th Cir. 1995) ("Sorenson had been under contract with the DOL for ten years to perform regulatory compliance audits and had twice audited the UTSC. As an accounting firm, Sorenson regularly prepared audit reports. Our review of the record convinces us the audit report qualifies in all respects as a business record."). Third, the emails are not hearsay for the independent reason that they are not offered for the truth of the matter asserted, but rather to show notice to Micron. *James v. J2 Cloud Servs.*

Netlist's corporate representatives likewise testified the meetings occurred and the presentations were given to Micron. Ex. 7 (Hong) at 169:23-170:1 ("███████████

███████████████████████████████████████████████████████████

████████████"), 174:20-25 ("██████████████████████████████

████████████████████████████████████████████████████

██████████████████████ 181:6-8 ("██████████████████

███████████████████████████████████████████"); Ex. 8 (Milton) at

38:23-39:9 ("█████████████████████████████████████████

███████████████████████████████████).[3]

Micron also objects to the relevance of Netlist's February 2011 presentation to ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████ Mot. 3.

Factual disputes are for cross-examination and the jury to resolve, they are not a matter of admissibility. Netlist's February 2011 presentation to Micron's predecessor, Elpida, expressly

---

*Inc.*, 2019 WL 2304157, at *3, n.2 (C.D. Cal. May 29, 2019) ("the Court overrules plaintiff's hearsay objection because the press release is not admitted for the truth of the matter asserted but rather to show that plaintiff had notice that JFAX obtained a patent").

[3] Micron's assertion that Mr. Hong lacks personal knowledge of the meetings is incorrect. ████████

███████████████████████████████████████████████████████

█████████████████████████████ Ex. 7 (Hong) at 167:1-6, 170:18-25, 240:18-25. █

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████ Corporate representatives may testify to matters "within the corporate knowledge" "even if [t]he[y] did not have direct knowledge of it." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006). Mr. Hong and Mr. Milton may testify to these same matters on which they were designated at trial. *Id.* ("if a rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within corporate knowledge to which he testified in deposition").

- 3 -

identified ████████████████████████████████████████████

████████████████████████████████████████████████████████

Dkt. 613-02, at 12, 63, 65; see Ex. 20 (Milton Decl.), ¶ 7 (████████████████████) Micron

thereafter acquired "100 percent of Epida's equity." Dkt. 440-3.  This notice is imputed to Micron by

virtue of its acquisition of Elpida. *See Tempur World v. Therapedic Sleep Prods.*, 2008 WL 11472214 (E.D.

Ky. Jan. 10, 2008) (finding notice could be imputed to related party and this was a fact issue for trial).

**2.**    **MIL No. 2**

Netlist only intends to present this information to the jury through Netlist's experts and within

the confines of their reports, subject to the Court's rulings on *Daubert* issues. Before introducing that

information in another context, Netlist would seek leave of Court pursuant to the Court's MIL No.

13 (as any party would be required to do). Micron's MIL is thus no more than a repetition of its motion

to strike Mr. Kennedy's analysis of the *Samsung* litigation, *see* Dkt. 360 at 3-6, which has been separately

briefed. As explained in Netlist's opposition to that motion, prior verdicts are admissible and relevant

evidence. Specifically, the Federal Circuit "has held that such evidence can be admissible if it is relevant

for some legitimate purpose." *Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*, 760 F. App'x. 977,

980 (Fed. Cir. 2019); *Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1365–66 (Fed.

Cir. 2006) (prior verdict relevant to the reasonable royalty analysis).

Micron assumes prejudice because the prior case involved "a different defendant," "different

asserted patents," and "different accused products." MIL, at 5. But as the Federal Circuit recognized

in *Sprint*, the risk of prejudice is actually reduced where the prior verdict involved a different defendant.

760 Fed. Appx. at 980 n.1. As to the difference in products, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████. Moreover,

████████████████████████████████████████████████

███████████████████████████ Ex. 9 (Lynde) ¶ 114 █████████████████████████████

*Sprint*, 760 Fed. Appx. at 980 (allowing evidence of prior verdict where there was no evidence that technology "was materially different from the technology raised in" current case). Further, the *Samsung* verdict was broken out by accused products and asserted patents. Ex. 10 (Verdict Form). The jury in this case would not be told anything regarding DDR5 or HBM products, or any patents at issue in *Samsung I*. Thus, Micron's concern that ██████████████████████████████████████ ████████████████████████ is misplaced. Mot., at 5. Moreover, "[a]ny differences between the two proceedings," are "available to [Micron] to argue to the jury." *Sprint*, 760 Fed. Appx. at 981.

Micron also argues that ████████████████████████████ would invite the jury in this case to defer to what the *Samsung I* jury determined and "derive a reasonable royalty from that damages award" instead of discharging their duty to resolve the issues in this case. Mot., at 5-6. But Micron's concern is entirely unfounded given that ██████████████████████████████████████ ██████████████████████████████████████████████████████████ *Compare* Dkt. 360-2 (Kennedy Rpt. Ex. 9) (████████████████████████████████████████████████ ███████████████████████) *with* ¶ 688 (████████████████████████████████████ █████████████████). And, even if Micron's prejudice concerns were legitimate—which they are not—those concerns could be assuaged by jury instructions that make clear that infringement and damages must be determined based on an analysis of the asserted claims against only Micron's accused products and the evidence presented at trial. The Federal Circuit in *Sprint* also highlighted the relevance of the prior verdict, recognizing that the district court admitted the prior verdict "to the extent that it informs Sprint's executives concerning what [they] might expect as a reasonable royalty," and "the verdict would be a factor of which the parties would have been aware at the time of their hypothetical negotiation in 2010, and a reasonable jury could well conclude that the verdict and the amount of damages awarded in a similar prior litigation would have influenced the outcome of a hypothetical

negotiation in the case at bar." *Sprint*, 760 F. Appx. at 981. ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████. *CAO Lighting, Inc. v. Gen. Elec. Co.*, 2023 WL 1930354, *9 (D. Del. Jan. 30, 2023) ("[D]amages experts are permitted to rely on license agreements entered years after the hypothetical negotiation date so long as the 'expert[ ] detail[s] the facts and circumstances that led [the expert] to conclude that the [ ] license [agreement] is technically and economically comparable to the hypothetical license in this case.'"); *M2M Sols. LLC v. Sierra Wireless Am. Inc.*, 2020 WL 7767639, at *17 (D. Del. Dec. 4, 2020) (denying exclusion of damages expert's opinion that was based on a license executed four years after hypothetical negotiation date).

Micron's concerns regarding prejudice are misplaced, and Micron's cited case law is inapposite. For example, Micron relies on *Coleman* to suggest that it would be "highly prejudicial" to tell "the jury in this case that a jury in another case, between Netlist and Samsung, awarded damages for infringement. Mot. 4-5; *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975). But the Federal Circuit in *Sprint* held that *Coleman* was not "persuasive authority" because "the prior verdict was against the **same defendant**, and the [*Coleman*] court observed that a jury 'is likely to give a prior verdict against the same defendant more weight than it warrants." *Sprint*, 760 Fed. Appx. at 981, n.2. Thus, as in *Sprint*, the circumstances of this case are similarly distinguishable from *Coleman* because Micron was not the "same defendant" in *Samsung I*, weakening any risk of prejudice. *Id.*

Micron also seeks exclusion of comparisons between ████████████████████ ████████, but the examples cited do not render such comparisons irrelevant or prompt jury confusion as Micron alleges. For example, Micron contends that Netlist will ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████." Mot., at 7. But Micron's corporate

representative admits that ███████████████████████████████████████████

██████████████████████████████████████████. Ex. 11, (BMS Rpt., Ex. A ¶ 42)[4]

(citing 2023-09-20 Beal Tr., 60:3-61:2. ███████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████”). ████████████████████

██████████████████████████████████████████████████████████*id*,¶ 22,

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. *Id.* n.60. █████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████.



*Id.* ¶121. While this evidence is undoubtedly probative of the industry's copying of Netlist's patents-in-suit, it may also bear on Micron's specific intent and willfulness.

The Court's ruling in the *Micron I* is not contrary.[5] There, the Court permitted Netlist's use of this evidence "within expert testimony of Messrs Kennedy, Brogioli, and Mangione-Smith. Ex. 12.

3.  **MIL No. 3**

Micron's motion seeks to exclude broad categories of evidence that are directly relevant to the issues of willfulness, damages, and the invention story of the patents-in-suit. Micron argues that

---

[4] Micron did not move to strike ███████████████████.
[5] While Netlist understands Judge Payne recommended granted Micron's MIL regarding the Samsung verdict in the -203 case, Netlist respectfully submits that the calculus is different in this case, given that the patents in *Samsung I* are not identical to the patents at issue in this case, so there is less chance that the jury would defer to the *Samsung I* verdict.

evidence of "distributed [data] buffer architecture" is "both irrelevant and highly prejudicial" because "none of the asserted patent claims require multiple buffers. Rather they only require a single buffer." Mot. at 7-8. In the co-pending litigation, after Netlist dropped two patents directed to the same DDR4 accused products at issue here, Micron brought a motion to "strike any mention of 'distributed buffer' technology in Dr. Mangione-Smith's report" alleging that it had "no nexus to the remaining asserted patents and is thus inadmissible under Federal Rules of Evidence 401 and 703." Ex. 13 (*Micron I*, Dkt. 282), at 1-2. Even though DDR4 products were no longer at issue, Judge Payne "decline[d] to strike any mention of 'distributed buffer' as it unnecessarily sweeps up still relevant portions of the report." Ex. 14 (*Micron I*, Dkt. 462), at 13.  If Judge Payne viewed "distributed [data] buffer architecture" relevant even where DDR4 products were no longer at issue in *Micron I*, it is most certainly relevant here where the only products accused of infringement are DDR4. Here, Micron did not even move to strike ███████████████████████████████████████████████████████████, *see* Ex. 11, ¶¶ 22-42, and should not be permitted to use a MIL as a backdoor motion to strike.

Micron's MIL to exclude "distributed [data] buffer" is none other than a surreptitious written description argument, *i.e.,* that the '417 patent does not disclose or claim distributed buffer, which Micron has already raised in its Motion for Summary Judgment. Dkt. 370. This Court should not afford Micron a second bite of its written description argument under the guise of a MIL. *Infernal Tech., LLC v. Sony Interactive Ent. LLC*, 2021 WL 405813, at *6 (E.D. Tex. Feb. 3, 2021) (since the motion *in limine* "duplicated Sony's motion for summary judgment on marking" it "was not a proper motion *in limine*," the court instructing that "[p]roper *limine* practice is not a second bite at the dispositive apple").

The '417 patent describes embodiments where some control signals are used to control the operation of the memory devices, and some are used to control the operation of "**one or more**" switches/buffers. *See, e.g.,* '417, 7:32-37; 16:34-48. Micron's expert, ██████████████████ ████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ Dkt. 453-03, (Stone Rebuttal, ¶¶ 254-55).

Micron speculates that "distributed [data] buffer" will be used to improperly bolster Netlist's evidence of (1) actual notice of pre-suit damages, (2) willful infringement, and (3) advantages of the claimed technology. Mot., at 9-10. These are not sound bases for exclusion.

As with its written description arguments, Micron should be foreclosed from another bite of its pre-suit damages arguments already subject to a summary judgment motion. Dkt. 367. *See, Infernal Tech.*, 2021 WL 405813. Further, Micron's MIL is not the vehicle to test Netlist's willful infringement claims. *PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, 2017 WL 8186294, *3 (N.D. Cal. 2017) ("The Court finds that Defendant's motion falls within category, as it seeks to argue the merits of Plaintiffs' willfulness claims. This is not a proper basis upon which to exclude evidence or argument. Plaintiffs are entitled to put on their willfulness case, even if Defendant thinks it is weak. Defendant's arguments go to the weight of Plaintiffs' evidence, which is the proper subject of cross examination").

Netlist should be allowed to tout its contribution to memory module technology, regardless of whether the claims of the '417 are directed to distributed buffer.  For instance, Micron's expert,



██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ Dkt. 358-02 (Halbert Rpt., ¶¶ 5, 22-23, 51. Micron MIL seeks to deprive Netlist's rebuttal. For example, ███████████████ ███████████████████████████████████████ Ex. 11, ¶¶ 22-42. In this section, Dr. Mangione-Smith states that ████████████████████████████████████████████ *Id.*, ¶23. Dr. Mangione-Smith also provided that Netlist ███████████████ ██████████████████████. *Id.*, ¶15 (██████ ████████████████). Likewise, Netlist

███████████████████████████████████████████████████

███ *Id.*, ¶21. The "distributed data buffer" architecture is directly relevant to the invention story of the '417 patent, Netlist's JEDEC contributions, and Micron's knowledge of Netlist's technology. Micron should not be permitted to make disparaging statements and then exclude contrary evidence.

4.    **MIL No. 4**

Micron's motion is overbroad. Netlist will not suggest to the jury that Micron's corporate representative had a legal duty to prepare on any topic or is charged with knowledge of another. But as the Court recognized in its order on a nearly identical MIL brought in *Micron I*, there are several situations where a corporate representative's lack of knowledge or statements inconsistent with other corporate testimony is relevant to cross-examination or impeachment, including:

> 1. If a witness testifies to a specific issue on direct examination, they can be cross-examined and impeached based on a lack of knowledge relating to that issue;
> 2. If a witness was designated as a 30(b)(6) representative at deposition and could not answer questions relating to their designated topic, they can be impeached on that basis; and
> 3. A corporate representative may be impeached at trial if the representative makes statements that are inconsistent with that party's 30(b)(6) deposition testimony.

Ex. 12, *Micron I*, Dkt. 413 (Order on MILs); Ex. 15, Dkt. 476 (Order Adopting Dkt. 413). The same three exceptions apply here. The boundaries of permissible cross-examination are defined by FRE 611. A MIL is not necessary to compel compliance with the Federal Rules.

Micron argues that if a corporate representative works in sales, Netlist should be prohibited from questioning them on technical details of the products or pre-suit communications. Mot. at 11. However, under the above exceptions, this may be permissible under the appropriate circumstances. For example, under the first exception, if that corporate representative who works in sales testifies on direct examination that Micron has an expansive patent portfolio, that witness can be cross-examined regarding their knowledge of Micron's patents. Micron cannot direct its witnesses on areas outside of their personal knowledge and then seek to preclude Netlist from cross-examination about those same topics, especially when those topics are unrelated to the witness's typical job responsibilities.

"When a corporation or association designates a person to testify on its behalf [under rule 30(b)(6)], the corporation appears vicariously through that agent." *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993). Micron also contends that "Netlist should not be able to point to Micron's corporate representatives as lacking knowledge that others at Micron would have." Mot., at 12. But this omits the important principle under blackletter law that an adverse party's 30(b)(6) testimony is permitted for use at trial. Under Rule 32(a)(3), "[a]n adverse party may use **for any purpose** the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Impeachment is a proper purpose. *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-456-JRG, 2018 WL 6787357, at *3 (E.D. Tex. Nov. 14, 2018) ("[t]o the extent [corporate representative's] answers are inconsistent with [former corporate representative's] 30(b)(6) testimony, Weatherford is permitted to use [former corporate representative's] 30(b)(6) deposition and his testimony at trial to impeach him."); *see also Lightfoot v. Hartford Fire Ins. Co.*, 2012 U.S. Dist. LEXIS 31615, at *3-4 (E.D. La. Mar. 9, 2012).

The unpublished opinion on which Micron relies, *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, at *7 (5th Cir. 2010), supports Netlist's position. Micron carefully ignores the portion of that opinion that notes "Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial." *See id.* at 907-08. Here, too, Netlist may impeach Micron's corporate representatives with the deposition testimony of its 30(b)(6) witnesses, which are not hearsay as to Micron. *See also Function Media, L.L.C. v. Google, Inc.*, 2010 WL 276093, at *3 (E.D. Tex. Jan. 15, 2010) ("[Plaintiff] is, of course, free to cross-examine [witness] with any relevant portions of Google's 30(b)(6) testimony"). The Court's ruling in *Samsung I* is not contrary. There, the Court granted Samsung's MIL in part, but clarified Netlist could seek leave to cross examine a witness. Ex. 16 (*Samsung I*, Dkt. 432), 12.

5.   **MIL No. 5**

Micron's motion seeks to gut vast swaths of Netlist's expert testimony and insulate Micron's

- 11 -

own experts from criticism. The Court's decision on Netlist's Motion for Summary Judgment that the asserted patents are not standard essential ("Essentiality Motion"), Dkt. 362, has no bearing on the infringement claims or damages analysis for any model of the accused products. Moreover, Micron did not move to strike <u>any</u> of these infringement or damages opinions presented by Netlist's experts; it should not be permitted to lie in wait and use a motion *in limine* as a backdoor *Daubert* motion.

Micron's theory is based on an assertion that Netlist relies "solely" on "mapping" the Asserted Patents to the JEDEC standards, "without a single reference to a Micron specification or datasheet." MIL, at 13. Micron's assertion is simply wrong. ███████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████. Netlist's infringement expert Dr. Mangione-Smith does not "map" the asserted claims to required portions of the JEDEC standards either. Instead, ███████████████████████████████████████████████ ██████████████████████████████ Dkt. 362-2 at ¶ 578, and bases his infringement analysis on █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ██████████████████████ *Id.* at ¶ 576. For example, Dr. Mangione-Smith discusses the █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ████████████████████████████████████.[6] Ex. 11 (BMS Rpt., Ex. A), ¶¶ 57-70.  Micron

---

[6] ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. Dkt. 445-10; 445-06, ¶ 96 (██████████████████████████████████████"); Dkt. 445-07, ¶ 2 ████████████████████

itself conceded in its opposition to the Essentiality Motion that ███████████████████ ███████████████████████████████████████████████████ Dkt. 448, 16.

To the extent Dr. Mangione-Smith discusses JEDEC specifications, he either cites ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Ex. 11, ¶¶ 57-70. For example, while Dr. Mangione-Smith ██████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████████. *Id.* ¶ 63 (███████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████████████████████████████████████ He also cites ██████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████████. *See, e.g., Id.* ¶ 62 (citing ███████████████████); Ex. 17 (BMS Rpt. Ex. B), ¶ 38 (██████████████ ███████████████████████████████████████████████████████████████). Thus, his discussion of JEDEC standards is only in ██████████████████ █████████████████████████████████████████████████████████████ ███████████████████████ *Id.* at ¶¶ 24-25, 63, 96-99. The fact that Dr. Mangione-Smith cites to JEDEC standards as additional evidence for certain limitations does not make the claims essential nor make the infringement analysis tied to essentiality. Dr. Mangione-Smith is not going to argue that any product infringes due to standard-essentiality, rendering this MIL moot as the Essentiality Motion has no bearing on the infringement case. Dr. Mangione-Smith will only testify within the confines of

---

████████████████████████. Micron did not move to strike any of these opinions.

his report (which addresses why all models of accused products infringe the patents in suit).

Despite bearing the burden to prove standard essentiality as part of Micron's RAND defense, it is Micron, not Netlist, who "steadfastly refused to provide its position on standard essentiality." Mot., at 13. In response to Netlist's request to "identify [its] bases as to whether [each asserted claim] is or is not an 'Essential Patent Claim' as defined in JEDEC," ███████████████████████████ ████████████████████████████████████████████████████████████████████ Ex. 18 (Micron Resp. to Netlist's Rogs) at 41-43. Conversely, in response to Micron's similar request, Netlist stated ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████ Ex. 19 (Micron Rog Set 2), at 30-32. Likewise, █████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████ Dkt. 364-03 at ¶ 398. This Court recently rejected this exact argument in the co-pending litigation with Micron, and questioned Micron's position that the claims were essential "if infringed," noting that infringement and standard essentiality are separate questions.[7]  Thus, Micron's accusations that Netlist "deliberate[ly] h[e]ld back its standard essentiality position" or "engaged in a calculated scheme to avoid taking a position on standard essentiality for DDR4 asserted patents" could not be further from the truth.  Mot. at 13-14.

Micron argues that by "waiting until []" ██████████████████████████████████████

---

[7] Dkt. 362-08 (*Micron I* Pretrial Conference Tr.) at 30:8-11 █████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████).

████████████████████████" "Netlist's conduct warrants exclusion," *id.*, but this actually offers further support for denying Micron's motion. As discussed, the burden of proving essentiality lies with Micron, not Netlist, so only Micron was required to address it in opening reports. That is, because Netlist's infringement expert, Dr. Mangione-Smith, did not base his infringement analysis on essentiality, it was not part of his infringement opinions. In his rebuttal report, however, Dr. Mangione-Smith ██████████████████████████████████████████████████

████████████████████████████████████ Dkt. 362-02 (BMS Rebuttal), ¶¶ 572-82.

The Court's decision on Netlist's Essentiality Motion has no bearing on the infringement claims or damages analysis for any model of the accused products. Essentiality is not an element of infringement, and Netlist's infringement analysis is based on the accused products, not JEDEC standards. Even if the Court declares the asserted patents are not standard essential, they may still cover certain features of standard-compliant products. ██████████████████████████

████████████████████████████████████████████████████

██████████████████ Dkt. 362-09 at 58:23-59:9 ("████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████); Dkt. 358-02

(Halbert Rpt.) at ¶ 43 ████████████████████████████████████████

████████████████████████████████████████████████████).

Dated: March 4, 2024                    Respectfully submitted,

                                        */s/ Jason G. Sheasby*

                                        Samuel F. Baxter

Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on March 4, 2024, a copy of the foregoing was served to all counsel of record.

/s/ Yanan Zhao
Yanan Zhao

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be

filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao