# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

NETLIST, INC.,

     *Plaintiff,*

v.

MICRON TECHNOLOGY, INC., *et al.*

     *Defendants.*

§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 2:22-CV-00294-JRG



## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Renewed Motion for Judgment as a Matter of Law on Damages (the "Motion") filed by Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC. (collectively, "Micron" or "Defendants"). (Dkt. No. 156.) In the Motion, Micron moves for judgment as a matter of law ("JMOL") in its favor on damages pursuant to Rule 50 of the Federal Rules of Civil Procedure. (*Id.*) For the reasons discussed herein, the Court finds that the Motion should be **DENIED**.

## I. BACKGROUND

Plaintiff Netlist, Inc. ("Plaintiff" or "Netlist") alleged that Micron infringes claim 16 of U.S. Patent No. 7,619,912 (the "'912 Patent") and claims 1, 2, 8, 11–14 of U.S. Patent No. 11,093,417 (the "'417 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 100.) After a trial in this case, the jury returned a unanimous verdict finding in relevant part that Micron infringed all claims of the Asserted Patents, that Netlist was entitled to $425,000,000 as a reasonable royalty for its damages for infringement of the '912 Patent, and $20,000,000 for its damages for infringement of the '417 Patent. (Dkt. No. 135.) Micron now asserts that the jury did not have a legally sufficient evidentiary basis to award such damages.

## II.    LEGAL STANDARD

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). The non-moving party must identify "substantial evidence" to support its positions. *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004).

"The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010)). A court must "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations." *Gomez v. St. Jude Med. Daig. Div. Inc.*, 442 F.3d 919, 937–38 (5th Cir. 2006).

## III.    DISCUSSION

Micron asks the Court to enter judgment as a matter of law in its favor on damages for both the '912 Patent and the '417 Patent. (Dkt. No. 156 at 1, 15.)  The Court will address each in turn.

### A.    The '912 Patent

Micron asks the Court to grant JMOL of no or nominal damages for the '912 Patent on the grounds that Netlist has not presented a legally sufficient evidentiary basis for the jury to find $425,000,000 in damages. (Dkt. No. 156 at 2, 12.) Micron contends "the problem is a lack of apportionment" due to Mr. Kennedy assigning all the revenue to the '912 Patent despite evidence showing that the claimed invention is not solely responsible for the benefit Netlist claimed. (*Id.* at

1.)  In response, Netlist argues that the Court should deny Micron's Motion with respect not only because Mr. Kennedy's apportionment analysis was proper and the jury's damage award is supported by substantial evidence, but also because Micron's argument fails on procedural grounds.  (Dkt. No. 174 at 2.)  The Court will begin by addressing Netlist's argument that Micron's argument fails on procedural grounds.

### 1.    Procedural Appropriateness

Netlist argues that the Court should decline to consider Micron's challenge to Mr. Kennedy's damages opinion because it is an attack on Mr. Kennedy's methodology, which is improperly raised in a Rule 50(b) motion, and should have raised it in a *Daubert* motion. (Dkt. No. 174 at 2.)  As support, Netlist cites several cases where courts have found that JMOL was not the appropriate context for attacks on an expert's methodology. (Dkt. No. 174 at 2 (citing *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13-cv-213-JRG, 2016 WL 362540, at *3 (E.D. Tex. Jan. 29, 2016) ("JMOL is not the appropriate context for renewing attacks on an expert's methodology."); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 740 at 13 (E.D. Tex. May 17, 2022) ("As this Court has previously held, it is improper to use a JMOL motion—or a motion for new trial—as a renewed *Daubert* challenge.").)

As proof that Micron is attacking Mr. Kennedy's methodology, Netlist points out that the heading of Micron's argument section focuses on whether the apportionment was "proper," not whether substantial evidence supports the jury's verdict. (Dkt. No. 184 at 1.)  Additionally, Netlist contends that Micron specifically faults Mr. Kennedy's opinion for failing to "remove the features enabled by the patents (and only the features enabled by the patents) because other technology is also required to enable that feature." (Dkt. No. 184 at 1.) (quotation marks cleaned up). Accordingly, Netlist argues that Micron's apportionment argument is waived.

In response, Micron claims that its issue with Mr. Kennedy's methodology was briefed and preserved for appeal in Micron's *Daubert* motion. (Dkt. No. 177 at 1 (citing Dkt. No. 360 at 8 (arguing that "[t]he Court should strike Mr. Kennedy's opinions regarding DDR4 LRDIMMs because he does not reliably apportion the value of the asserted patents.").) Netlist responds that Micron only raised its *Daubert* motion with respect to LRDIMMs, not RDIMMs, and regardless, it is still improper to raise attacks on methodology in post-trial JMOL motions. (Dkt. No. 184 at 1.) Micron primarily claims, however, that Netlist fails to properly address its argument, and states that its Motion is not premised on whether Mr. Kennedy's methodology was properly admitted, but rather that no reasonable jury could have awarded $425 million for the '912 Patent based on the trial record. (Dkt. No. 177 at 1.)

In the present case, the Court notes that many arguments raised in Micron's Motion are attacks on Mr. Kennedy and Dr. Mangione-Smith's methodologies. For example, Micron repeatedly attacks the Netlist's experts' theories when it claims that "Mr. Kennedy and Dr. Mangione-Smith failed to properly separate and exclude the value of these other non-patented features." (Dkt. No. 156 at 8; *see also* Dkt. No. 177 at 1 ("Netlist's Apportionment Analysis Was Not Proper."); at 2 ("Mr. Kennedy's opinion does not remove the features enabled by the patents (and only the features enabled by the patents) because other technology is also required to enable that feature.") (quotation marks cleaned up).) Notably, when Micron summarizes its argument for the Court, Micron focuses its challenge on the admissibility of evidence rather than the sufficiency. (*See* Dkt. No. 156 at 2 ("In short, Netlist failed to *properly* present evidence . . . .") (emphasis added).)

Accordingly, to the extent that Micron attacks Mr. Kennedy's methodology, as opposed to challenging the sufficiency of the evidence, the Court finds such arguments are improper, and rejects them as either having been waived (if Micron failed to raise them at *Daubert*) or are

improperly re-raised again at the Rule 50(b) stage. *See KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 889 (E.D. Tex. 2020) ("As a threshold matter, the Court notes that Defendants did not challenge the admissibility of KAIST's experts' apportionment opinions as disclosed in their expert reports. Therefore, any such challenges are procedurally waived and the Court reviews Samsung's challenges only for the sufficiency of the evidence admitted at trial."); *Netlist, Inc. v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:21-cv-00463-JRG, Dkt. No. 606 at 14 (E.D. Tex. July 15, 2024) ("Samsung raised these same arguments at the *Daubert* stage and lost—Samsung does not now get a second bite at that same apple."); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13-CV-213-JRG, 2016 WL 362540, at *4 (E.D. Tex. Jan. 29, 2016), *aff'd*, 853 F.3d 1370 (Fed. Cir. 2017) ("[T]o the extent that Samsung now merely re-urges its prior *Daubert* arguments, the Court rejects such as improper.").

## 2. The jury's award is supported by a legally sufficient evidentiary basis.

Micron contends that Netlist has not presented a legally sufficient evidentiary basis for the jury to find $425,000,000 in damages on the '912 Patent because Mr. Kennedy failed to apportion for non-infringing technology. (Dkt. No. 156 at 2.) Specifically, Micron asserts that because Mr. Kennedy's calculations were based on a comparison between the Accused Products and the alleged non-infringing alternatives, Mr. Kennedy was required to establish that the differences between the Accused Products and the non-infringing alternatives were limited to the incremental benefit provided by Claim 16 of the '912 Patent. (*Id.* at 2-3 (citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("[T]he ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.")).) Micron contends, however, that no reasonable jury could have found that Mr. Kennedy's valuation apportioned the incremental value of the claimed invention. (Dkt. No. 156 at 3.)

Micron notes Mr. Kennedy testified that where Micron could not sell DDR4 DIMMs that operate at above 2400 MT/s, Micron's best alternative would be to decrease the speed of the DIMMs to 2400 MT/s to avoid using the '912 Patent. (Dkt. No. 156 at 4; Trial Tr. at 587:8-13.) Micron further contends that Mr. Kennedy then assigned all the revenue associated with Micron's DDR4 Accused Products operating at speeds over 2400 MT/s to the '912 Patent. (Dkt. No. 156 at 1, 6.) Micron claims that doing so, however, was improper because the evidence shows that the claimed invention was not solely responsible for this speed benefit. (*Id.* at 1, 5-6 (citing e.g., Trial Tr. at 495:15-18 ("Q. And, in fact, you know that there are other patents that also you believe without them those products wouldn't be able to operate above 2400 mega transfers per second. A. That -- yeah, that seems reasonable.")).) Additionally, Micron claims that Dr. Mangione-Smith conceded that not "all the performance comes from" PDA mode. (*Id.* at 5 (citing Trial Tr. at 367:18-19).)

Micron contends that this problem is further compounded because Netlist has left nothing but speculation to fill the gap as to how much of the speed benefit is owed to the claimed invention. (Dkt. No. 156 at 7.) For example, when Micron asked Dr. Mangione-Smith whether he "believe[d] all of the speed increase over 2400 seconds is due solely to this '912 Patent," Dr. Mangione-Smith admitted he had not considered that question. (*Id.* (citing Trial Tr. at 495:9-11).) As a result, Micron argues that Netlist's damages evidence does not reflect the incremental value that the patented invention adds to the end product. (*Id.* at 6-8.) Accordingly, Micron argues that the Court should grant JMOL of no or nominal damages for the '912 Patent. (*Id.* at 8.)

In response, Netlist contends that Mr. Kennedy's analysis was proper because his analysis follows the approach endorsed by the Federal Circuit and approved by this Court. (Dkt. No. 174 at 4 (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other*

6

*grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (recognizing that "estimating a 'reasonable royalty' is not an exact science" and includes methods such as "estimat[ing] the value of the benefit provided by the infringed features by a comparing the accused product to non-infringing alternatives.")); Dkt. No. 174 at 11 (citing *Netlist Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:21-cv-463, Dkt. No. 608-1 at *50 (E.D. Tex. July 15, 2024) (noting Samsung's argument that Mr. Kennedy failed to apportion was not persuasive because Mr. Kennedy "included the apportionment to his damages number" by "award[ing] to Netlist the difference in value between the accused product and the next-best alternative.")).)

Netlist contends that not only did Mr. Kennedy's analysis follow this exact approach, but he testified extensively on how he apportioned the value provided solely by the '912 Patent. (Dkt. No. 174 at 4.)  Netlist notes that Mr. Kennedy began by explaining the proper apportionment standard—i.e., that apportionment requires "you to look at the portion of the profit that should be credited to the invention as opposed to other patented technology or other technology." (*Id.* (citing Trial Tr. at 606:7-9).) Then Mr. Kennedy explained that to assess the value of the benefits provided by the '912 Patent, he relied on Dr. Mangione-Smith's testimony and the supporting evidence showing that "without the Netlist technology, [Micron] wouldn't be able to sell these high performance DIMMs and these LRDIMMs for high density servers." (Dkt. No. 174 at 4; Trial Tr. at 586:1-4; *see also* 367:6-13.) ("Q. And so if you didn't have the technology of the '912 Patent . . . what impact would that have on the speeds possible in Micron's modules? [Dr. Mangione-Smith:] A. Well, it would hurt the speed, and as Micron said, it would severely derate the performance. And so it -- I believe that that means that they would not be able to operate at speeds above 2400."). This is because, as the jury heard from Dr. Mangione-Smith, the use of the '912 Patent in the Accused Products is "commercially necessary to operate over 2400 mega transactions per second

or million transactions per second." (*Id.* (citing Trial Tr. at 586:17-19).)  Mr. Kennedy then explained to the jury that he accounted for this apportionment factor by basing his calculations "just on the benefits provided by the '912 Patent" as testified to by Dr. Mangione-Smith, further stating that "it's already been apportioned by the apportioning out any technical benefits related to other technology because all I'm valuing is the benefit related to the accused features." (*Id.* at 4-5 (citing Trial Tr. at 606:12-17.)

This opinion was further supported by Dr. Mangione-Smith's testimony that though Micron offered several infringing alternatives (e.g., using DDR2 or DDR3 memory devices in DIMMs, or using unregistered DDR4 that do not have an RCD), none of these alternatives were commercially acceptable.  (Dkt. No. 174 at 5; Trial Tr. at 369:2-14.)  Accordingly, Netlist contends that Mr. Kennedy properly apportioned the value of that benefit because the patented features are commercially necessary to enable the 2400 MT/s speed of the Accused Products. (Dkt. 174 at 6.)

Further, in response to Micron's contention that Mr. Kennedy's analysis does not reflect the incremental value that the patented invention adds to the end product, Netlist contends that Mr. Kennedy's royalty calculation was based solely on the speed benefits enabled by the '912 Patent. (*Id.* at 6.)  As support, Netlist contends that Mr. Kennedy relied on the "actual data of what people have paid for speed" and found that Micron would have suffered a "decrease in price" of "1.18 percent for LRDIMMs" and a ".43 percent" for "RDIMMs."  (*Id.* (citing Trial Tr. at 590:1; 590:21-591:1).)  Mr. Kennedy further explained ██████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████

Additionally, in response to Micron's contention that Mr. Kennedy attributed the entire price (revenue) premium associated with the selling products at speeds above 2400 MT/s to the

'912 Patent, Netlist claims that Mr. Kennedy was "highly conservative with his application of the royalty rate to the royalty base." (*Id.* at 6.) First, Netlists argues that Mr. Kennedy indisputably performed his analysis on the smallest salable patent practicing unit, focusing solely on the Accused Products and solely on the benefit conferred on those products by the '912 Patent. (*Id.* at 6-7.) Second, Netlist notes that Mr. Kennedy was also conservative in his approach, which is supported by his testimony that selling the "lower speed DIMM" meant Micron would "have to sell them at a lower price." (*Id.* at 7; Trial Tr. at 589:8-9.) Finally, Netlist argues that even if Mr. Kennedy had attributed the entire price (revenue) premium to the '912 Patent, this Court has held that this would have been proper under Federal Circuit precedent. (Dkt. No. 174 at 7-8 (citing *Netlist Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-463, Dkt. No. 608-1 at *45 (E.D. Tex. July 15, 2024) ("The Court is not persuaded by Samsung's arguments. There is no doubt that Mr. Kennedy opined that a proper award to Netlist would cover 100% of the revenue associated with the technology at issue. While Samsung contends that this is impermissible . . . Samsung is wrong.")); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) (affirming cost savings approach); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015) ("It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages.").

As further justification for its apportionment approach, Netlist argues that Micron did not offer evidence that these benefits could be achieved without the claimed '912 invention, nor did it offer evidence of any other contributing patents or technology. (Dkt. No. 174 at 9.) At trial, Mr. Kennedy testified that Micron never offered any evidence of the contributions of other patents or technology. (*Id.* at 7.) Specifically, Mr. Kennedy explained that other apportionment approach should not be implemented here because he "didn't see any evidence of any patents that

contributed to the accused features that Micron presented," nor did he know of any, and he did not see evidence of any technology that Micron claimed "helped advance those accused features." (Trial Tr. at 607:24-608:2.)

Finally, Netlist notes that the jury was also presented with several alternative apportionments, including Mr. Kennedy's technical apportionment analyses and those provided by Micron's experts. (Dkt. No. 174 at 9.) In particular, Mr. Kennedy presented the jury with the ultimate numbers he arrived at for additional apportionment, which was "105 million" for RDIMMs and "12.15 million" for LRDIMMs. (*Id.*) Netlist contends that the jury did take these alternative approaches into consideration, as they ultimately awarded damages below the highest amounts Mr. Kennedy suggested. (*Id.* at 10.)

After considering all the evidence in a light most favorable to the verdict, the Court finds that the jury's damages award for the '912 Patent is supported by substantial evidence. During trial, the jury heard extensive testimony from Mr. Kennedy about how he apportioned the value provided solely by the '912 Patent. In particular, the jury heard Mr. Kennedy explain the proper apportionment standard and then explain that without the Netlist technology, Micron would not be able to sell these high performance DIMMs and LRDIMMs that "operate at speeds above 2400." (Trial Tr. at 586:1-4; 586:14-19; 606:7-9.) Mr. Kennedy further explained that he accounted for the apportionment factor by basing his calculations "just on the benefits provided by the '912 Patent" as testified to by Dr. Mangione-Smith, stating that "it's already been apportioned by the apportioning out any technical benefits related to other technology because all I'm valuing is the benefit related to the accused features." (*Id.* at 606:12-17.) This testimony came after Dr. Mangione-Smith also testified that if Micron "didn't have the technology of the '912 Patent," they "would not be able to operate at speeds above 2400." (*Id.* at 367:6-13.)

Mr. Kennedy also explained that he "didn't see any evidence of any patents that contributed to the accused features that Micron presented" nor did he know of any, and he also did see evidence of any technology that Micron claimed "helped advance those accused features." (*Id.* at 607:24-608:2.) He testified, nevertheless, that he awarded only the value for the "difference in speed based on what Doctor Mangione had opined was related to the patents." (*Id.* at 627:12-16.) Additionally, the jury heard that Mr. Kennedy relied on the "actual data of what people have paid for speed" and found that Micron would have suffered a "decrease in price" of "1.18 percent for LRDIMMs" and a ".43 percent" for "RDIMMs." (*Id.* at 590:1-2; 590:21-591:1.) Mr. Kennedy explained ██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

The jury also heard that Mr. Kennedy was "conservative" with his application of the royalty rate to the royalty base. (*Id.* at 594:12-17.) Additionally, the jury heard several alternative apportionments from Mr. Kennedy as well as damages calculations provided by Micron's experts. (*See, e.g.,* Trial Tr. at 630:3-633:25; 917:7-12.) In particular, Mr. Kennedy presented the jury with the ultimate numbers he arrived at for this additional apportionment, which was "105 million" for RDIMMs and "12.15 million" for LRDIMMs. (*Id.* at 633:9-25.)

The Court concludes that, contrary to Micron's arguments,[1] Mr. Kennedy adequately estimated the "portion of the value" of the accused products "attributable to the patented technology." *VirnetX, Inc. v. Cisco Sys. Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("This court has recognized that

---

[1] The Court notes that while Micron purportedly brings this Motion to challenge the sufficiency of the evidence, the crux of its Motion are arguments attacking the methodology and admissibility of the evidence. (*See, e.g.*, Dkt. No. 156 at 2 ("[Mr. Kennedy] failed to apportion for non-infringing technology . . ."); at 8 ("Mr. Kennedy and Dr. Mangione-Smith failed to properly separate and exclude the value of these other non-patented features.").) As previously stated, to the extent that Micron attacks Mr. Kennedy's methodology, as opposed to challenging the sufficiency of the evidence heard by the jury, the Court finds such arguments as improper.

estimating a reasonable royalty is not an exact science. . . . A party may . . . value the infringed features by comparing the accused product to non-infringing alternatives.").

Nevertheless, Micron disagreed with Mr. Kennedy's apportionment approach and vigorously cross-examined him, after which Micron presented rebuttal testimony to the jury from its own experts about the proper measure of damages. (*See, e.g.,* Trial Tr. at 621:24-647:13; 917:4-12.). The jury was free to judge the credibility of all of the experts and determine who had persuaded them when awarding damages. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1362 (Fed. Cir. 2012). After conducting such an evaluation, the jury found in favor of Netlist and awarded it $425 million in damages for the '912 Patent, ███████████████████

████████████████████████████████████████████

Having considered all the record evidence, the Court concludes that the jury reached a reasoned and supportable decision and declines to disturb the jury's judgment. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1310 (Fed. Cir. 2009) ("A jury's decision with respect to an award of damages must be upheld unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork.") (quotation marks cleaned up); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) ("The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion."). Accordingly, the Court **DENIES** the Motion of no or nominal damages for the '912 Patent.

12

## B.     The '417 Patent

Micron contends that Netlist has not presented a legally sufficient evidentiary basis for the jury to find any damages for the '417 Patent because Netlist's theory rests on an unclaimed feature as opposed to the claimed invention. (Dkt. No. 156 at 8.) Specifically, Micron contends that Netlist's damage's theory is predicated on a single feature—distributed buffer architecture—that the undisputed evidence establishes is not claimed in the '417 Patent. (*Id.*) Micron further contends that because Netlist's damages theory hinges on this unclaimed feature, Netlist failed to prove it is entitled to any damages for the '417 Patent. (*Id.* at 9.)

In response, Netlist argues that the Court should deny Micron's Motion with respect to the '417 Patent not only because there is ample evidence in the trial record concerning the benefits afforded by the claimed features of the '417 Patent that support the jury's damage award, but also because Micron's argument is procedurally improper.  (Dkt. No. 174 at 11.)  The Court will begin by addressing Netlist's contention that Micron's argument is procedurally improper.

### 1.     Procedural Appropriateness

Netlist contends that Micron's argument as to the '417 Patent has been waived because it is an attack on an expert's methodology, which this Court and the Federal Circuit have held is not proper in a motion for JMOL. (Dkt. No. 174 at 11-12.)  As support, Netlist cites to *Versata* where the Federal Circuit rejected JMOL arguments targeted at both the admissibility of expert testimony and whether the expert's damages model was properly tied to the facts of the case because they were made "[u]nder the guise of sufficiency of the evidence," and should have been resolved under the framework of the Federal Rules of Evidence and through a challenge under *Daubert*. 717 F.3d at 1264. Netlist contends that though Micron frames its Motion as attacking the sufficiency of evidence, Micron is actually challenging the verdict on the basis of "Netlist's damages theory." (Dkt. No. 174 at 12.)  Netlist claims this is supported by the fact that Micron's argument is directed

13

entirely to "how" Mr. Kennedy calculated his proposed reasonable royalty. (Dkt. No. 184 at 4 (citing e.g., Dkt. No. 156 at 10 ("Netlist violated this prohibition on basing damages solely on an unclaimed feature—distributed buffers. In valuing the technical benefit of the '417 patent, Mr. Kennedy…); at 8 ("Netlist's damage's theory is predicated on a single feature . . ."); at 8 ("Its Damages Theory Rests on an Unclaimed Feature"); at 9 ("Netlist's damages theory hinges on this unclaimed feature . . .")).) Consequently, Netlist contends that such arguments challenging the reliability and admissibility of evidence have been procedurally waived. (Dkt. No. 174 at 12.)

While Netlist admits that Micron raised this issue in a motion *in limine*, Netlist notes first that the Court denied that motion *in limine* and carried the issue of whether any limiting instruction would be appropriate until Netlist presented such evidence at trial, and second that Micron did not challenge Mr. Kennedy's methodology at *Daubert* on the basis it raises in this Motion nor did Micron renew its evidentiary objection at trial. (Dkt. No. 174 at 12-13 (citing e.g., *U.S. S.E.C. v. Snyder*, 292 F. App'x 391, 400 (5th Cir. 2008) ("Because Snyder did not object to the admissibility of Hoffman's testimony concerning the accounting practices at issue, that issue has been forfeited.").

Importantly, Micron does not dispute that it failed to raise this specific challenge to Netlist's damage theory at *Daubert* nor does Micron dispute it failed to object to this testimony at trial. (*See* Dkt. No. 177 at 2-3.) Instead, Micron responds that Netlist mischaracterizes its arguments as attacks on Netlist's expert's methodology rather than as an argument that the damages for '417 Patent are not supported by substantial evidence. (*Id.*) Specifically, Micron contends that the jury's verdict is not supported by substantial evidence because "Netlist's expert testimony for damages was calculated based on an unclaimed feature." (*Id.* at 2-3.)

14

As support that this argument is not waived, Micron cites the Federal Circuit's decision in *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398 (Fed. Cir. 2018). There, the Federal Circuit reviewed the district court's denial of JMOL where Enplas argued the jury's $4 million damages award was not supported by substantial evidence because the "only evidence supporting the $4 million award was testimony from SSC's damages expert that explicitly and improperly included non-infringing devices in the royalty calculation." *Id.* at 409. The Federal Circuit noted that before trial Enplas had filed a *Daubert* motion and a motion *in limine* to exclude this testimony, and the district court's order "limited SSC's expert" and "did not allow a damages theory based on sales of non-accused products." *Id.* Moreover, at trial, Enplas "again objected to SSC's expert's methodology," which the district court overruled and held that its opinion had not changed from its prior rulings. *Id.* at 410.

In deciding that Enplas properly challenged the sufficiency of evidence on its appeal to the Federal Circuit, the majority stated in a footnote that *Enplas* was "distinguishable from *Versata.*" *Id.* at 411, n.2. The Court reasoned that while the appellant's briefs in *Versata* confirmed its arguments should have been resolved under *Daubert* or the Federal Rules of Evidence because it argued evidence should have been "excluded" and that the district court "should not have permitted Versata's expert to present his lost profits theory," the appellant in *Enplas* specifically argued that the verdict was not supported by substantial evidence. *Id.* Consequently, the majority found that such argument was not improperly raised under the "guise" of sufficiency of evidence. *Id.*

The facts in the present case vary materially from those in *Enplas*. In this case, Micron argues that "Netlist's expert testimony for damages was calculated based on an unclaimed feature." (Dkt. No. 177 at 2-3.) However, Micron did not challenge Mr. Kennedy's damages analysis on this basis at *Daubert*, nor did Micron raise an objection to this damage theory at trial after the

Court denied its motion *in limine*. *See, e.g., Collins v. Wayne Corp.*, 621 F.2d 777, 785–86 (5th Cir. 1980) ("[A]n objection is required to preserve error in the admission of testimony or the allowance of cross-examination even when a party has unsuccessfully moved *in limine* to suppress that testimony . . . . The courts cannot adopt a rule that would permit counsel to sit silently when an error is committed at trial . . . ."). Moreover, when Micron summarizes its argument for the Court, Micron focuses its challenge on the admissibility of evidence rather than the sufficiency. (*See* Dkt. 156 at 2 ("In short, Netlist failed to *properly* present evidence . . . .") (emphasis added).) Therefore, to the extent that Micron attacks the methodology or admissibility of Mr. Kennedy's damages analysis or Netlist's damages theory, any such challenges are procedurally waived. The Court cannot allow a party to reserve its *Daubert* motions and trial objections until a jury renders an unfavorable verdict on a damages theory that the party never challenged and never gave the Court a chance to exclude. Micron has acquiesced to the jury hearing "Netlist's damages theory" by failing to raise an earlier challenge or objection.

Nevertheless, despite finding that Micron's arguments based on "Netlist's damages theory" have been waived, the Court reviews the verdict for the sufficiency of evidence to the extent that Micron challenges the sufficiency of the evidence, rather than the admissibility or methodology of such evidence. *See Stevenson v. E.I. DuPont De Nemours & Co.*, 327 F.3d 400, 407 (5th Cir. 2003) ("[T]his Court may review the record to determine the sufficiency of the evidence; the defendant's waiver of any challenges to the admissibility of the expert testimony does not preclude such a sufficiency review by this Court."); *see also KAIST*, 439 F. Supp. 3d at 889.

### 2. The jury's award is supported by a legally sufficient evidentiary basis.

Micron contends that Netlist has not presented a legally sufficient evidentiary basis for the jury to find any damages for the '417 Patent because Netlist's damages theory rests on an unclaimed feature—distributed buffer architecture—as opposed to the claimed invention.

(Dkt. No. 156 at 8.) As support, Micron contends that both the blackletter law and the Court's jury instructions make it impermissible to predicate damages on an unclaimed feature. (*Id.* at 9-10 (citing Final Jury Instructions at 1090:16-19 ("If unpatented features contribute to the accused products, you must apportion that value to exclude any value attributable to unpatented features"); *see also e.g., Brumfield, v. IBG LLC*, 97 F.4th 854, 877 (Fed. Cir. 2024) ("[T]he incremental value to be allocated, in the hypothetical negotiation, is the value of the *claimed* technology (not, *e.g.*, of unclaimed product improvements) over that of noninfringing alternatives.").

Despite this prohibition, Micron contends that Mr. Kennedy, in valuing the technical benefit of the '417 Patent, relied on Dr. Mangione-Smith's testimony that the sole benefit—reduced load—derived from an unclaimed feature identified as "distributed buffers." (Dkt. No. 156 at 10.) Specifically, Dr. Mangione-Smith testified that:

Q. And does Micron obtain a benefit from asserting the claims of the '417 Patent?

A. Yes, they do.

Q. What is that benefit?

A. Well, the benefit, as I said, is that the distributed buffers allows the load seen by the memory controller to be reduced. So here's an example. We haven't really talked about the concept of a channel yet, but a channel is one path from the memory controller to multiple DIMMs or multiple slots that it can talk to. It can only talk to one at a time, but you can put multiple DIMMs in that system. Now, on the left-hand side, I've shown something called a 1DPC configuration. That means there's one DIMM per channel, and because of the distributed buffers, even though there's two ranks, it only shows a load of one.

(Trial Tr. at 425:1-15). Micron contends, however, that Dr. Mangione-Smith admitted on cross-examination that the claims do not require multiple buffers:

Q. Right. So you agree that the '417 Patent claims, they don't require multiple data buffers. Correct?

A. I would think that's a fair assessment.

. . .

17

Q. Well, didn't you agree earlier that distributed buffers require more than one buffer? Right?

A. Yes.

Q. And so in order to cover in a claim a distributed data buffer, you would have multiple buffers. Correct?

A. Yes. If you have multiple buffers, you have multiple buffers.

(Trial Tr. at 503:10-22.) Likewise, Micron notes that the named inventor of the '417 Patent confirmed that distributed data buffers are not required by any claimed invention in the '417 Patent. (Dkt. No. 156 at 12 (citing Trial Tr. at 904:23-905:3 ("Q. During your work at Netlist, did you ever work on a DIMM that included distributed buffers? A. No. Q. Did you make any inventions related to distributed buffers while at Netlist? A. Not that I recall."); *see also* 906:16-23) ("Q. Well, outside of the language here, did you ever invent a prod -- a product or technology where there was logic and that logic would be -- respond to a memory command by providing control signals to a buffer, and those control signals enabled communication between memory devices and a memory controller? A. No. Since you mentioned buffer, I was not affiliated with anything that I recall that included a buffer, that name, no.")).)

Consequently, Micron contends that because a distributed data buffer architecture is unclaimed, the technical benefit of the '417 Patent cannot be derived from such architecture. (Dkt. No. 156 at 12.)[2]

---

[2] Micron also argues that Netlist cannot escape this conclusion by "latching onto the 'comprising' format of the claims" since the word "comprising" cannot be used to "open the backdoor to allowing an unrecited feature to undergird a damages award." (Dkt. No. 156 at 12-13 (citing *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1329 (Fed. Cir. 2004) ("Although 'comprising' language is not limiting and may include features not recited in the claim, such language cannot be read to require other structure.").) The Court notes that this argument became an issue during the direct examination of Micron's technical expert, Dr. Harold Stone, when counsel for Micron asked Dr. Stone whether the '417 Patent mentions distributed data buffers or multiple data buffers. (Trial Tr. at 693:17-20.) Counsel for Netlist objected that because the claim "is a comprising claim that only requires at least one buffer," the use of multiple buffers in the accused product was being improperly used as "a basis for non-infringement." (Trial Tr. at 694:9-14.) The Court sustained the objection as to infringement but permitted it as to the issue of damages. (*Id.* at 694:20-22.) Though Netlist argues that the '417 Patent is not "limited to a single buffer architecture," in part, because the '417 Patent uses "comprising," the Court agrees with Micron that "comprising" language would not allow a patentee to claim the benefits of an otherwise unrecited feature.

Micron further argues that, to the extent that Netlist claims the valuation should be determined from what the patent describes in the specification, the distributed buffer architecture is an "unclaimed product improvement" that cannot prove Netlist's damages regardless of any disclosure. (Dkt. No. 156 at 13.) Moreover, Micron claims that Netlist has not offered any credible evidence that '417 Patent even discloses a distributed data buffer architecture and cannot do so because the patent's specifications contradict such evidence. (*Id.*) Micron contends, therefore, that because the distributed data architecture is unclaimed, if not also undisclosed, the Court should grant JMOL of no or nominal damage for the '417 Patent. (*Id.* at 15.)

In response, Netlist contends that the Micron's argument concerning the damages award for the '417 Patent fails because the evidence presented at trial substantially supports that the jury's award was based on the claimed features of the '417 Patent. (Dkt. No. 174 at 13.) First, Netlist states that the '417 Patent enables a commercially viable DDR4 LRDIMM product that can be configured with 2DPC via the timing of the data transfers through a distributed data buffer architecture. (*Id.* at 14.) As support, Netlist cites Claim 1 of the '417 Patent, which recites:

> circuitry coupled between the data signal lines in the N-bit wide memory bus and corresponding data pins of memory devices in each of the plurality of N-bit wide ranks, the circuitry being configurable to transfer the burst of N-bit wide data signals between the N-bit wide memory bus and the memory devices in the one of the plurality of N-bit wide ranks in response to **the data buffer control signals** and in accordance with an overall CAS latency of the memory module;
>
> wherein data transfers through the circuitry are registered for **an amount of time delay** such that the overall CAS latency of the memory module is greater than an actual operational CAS latency of each of the memory devices.

('417, cl. 1.; Dkt. No. 174 at 14.) (emphasis original). Netlist claims that the benefit of the '417 Patent, therefore, is the ability for a DIMM with a distributed buffer architecture to be configured with two DIMMs per channel (2DPC). (*Id.* at 14.)

19

In reply, Micron argues that Netlist still does not identify any claim limitations reciting the distributed buffer architecture and instead, identifies claim language that includes "data buffer control signals" and timing information. (Dkt. No. 177 at 4.) Micron contends that the claim language cannot recite a distributed data buffer architecture because it does not recite multiple buffers, as both parties' experts admit. (*Id.* at 4 (citing Trial Tr. at 503:10-13 ("Q. Right. So you agree that the '417 Patent claims, they don't require multiple data buffers. Correct? A. [Dr. Mangione-Smith] I would think that's a fair assessment."); Trial Tr. at 693:4-6 ("Does the '417 Patent claim cover multiple or distributed buffers? A. [Dr. Harold Stone] It does not.").

Netlist responds that Micron misses the point of the technical benefit of the '417 Patent. (Dkt. No. 184 at 4.) Netlist contends not only that the distributed data buffer is Micron's implementation of Netlist's invention, but that Micron never disputes it could not have implemented a distributed data buffer approach without infringing the '417 Patent. (*Id.*) Moreover, Netlist contends that the Micron does not dispute that the '417 Patent provides the benefits of (i) a buffer that provides more capacity to be used, (ii) timing control technology, (iii) a logic element configurable to output data buffer control signals, and (iv) one additional clock cycle to be added in order to provide sufficient buffering time between the memory controller and the DRAMs. (Dkt. No. 184 at 5 (citing Trial Tr. at 370:24-25, 392:1-10).) Netlist further contends that Micron does not dispute that without the use of the '417 Patent, "the load would be too high and it would block their products from being used in 2DPC or 3DPC configuration," and the next best alternative would be to use "no data buffers" or "single rank modules." (Dkt. Nos. 174 at 14-15; 184 at 5 (citing Trial Tr. at 426:10-14, 428:21-25).)

Netlist contends, therefore, that Mr. Kennedy's damages analysis properly took these opinions into account when determining the value of the benefits provided by the claimed

invention of the '417 Patent. (Dkt. No. 174 at 15.) Specifically, Mr. Kennedy testified that his understanding of the technical benefit was obtained from Dr. Mangione-Smith. (Trial Tr. at 592:2-6.) Mr. Kennedy testified he understood from Dr. Mangione-Smith's testimony that the '417 Patent allows the accused DDR4 LRDIMMs to be used in a two DIMMs per channel (2DPC) configuration, which he summarized as essentially "one channel with two DIMMs" that would only be one channel without the '417 technology. (Trial Tr. at 592:6-10.) Mr. Kennedy further testified that Micron's next best alterative "if [it] couldn't offer two 64-gigabyte LRDIMMs," would be to "sell to that customer one 128-gigabyte DIMM and not charge them any more than that." (Dkt. No. 174 at 15; Trial Tr. at 593:6-13.) Mr. Kennedy explained that the cost to Micron of this alternative would have been "$292.75" per customer, which then would then total "$33.26 million" for the benefit that Micron gained from using Netlist's '417 Patent technology. (Trial Tr. at 594:6-9.) Finally, Mr. Kennedy testified that this "$33.26 million" does not account for "all of the benefits that Micron obtained" because of the conservative approach he took. (*Id.* at 594:9-17.)

Netlist also contends that beyond the patent claim itself, the jury was provided with substantial evidence explaining the claimed benefit of the '417 Patent at trial, including testimony from its own witnesses. (Dkt. No. 174 at 14.) As an example, Netlist contends that its corporate representative and Vice President of Engineering, Mr. Scott Milton, testified that the patented feature is the distributed data buffer *and* related timing controls:

Q. (BY MR. SHEASBY) What is the feature that achieved this increase in density?

A. So that would be the distributed data buffer **and the timing controls** that we developed in order to be able to use it.

Q. When did Netlist believe the distributed data buffer with **timing control technology** in the '417 Patent would become most important?

A. At that DDR4 generation, the higher speeds and the higher density.

21

(Trial Tr. at 218:15-24; Dkt. No. 174 at 14) (emphasis original). After Mr. Scott Milton testified,

Dr. Mangione-Smith explained that chief benefit of the '417 Patent, stating:

> Q. And what's the title of the '417 Patent?
>
> A. "Memory module with data buffering."
>
> Q. And what is that? What is the '417 Patent about at a high level?
>
> A. So it's about **providing a buffer that allows more capacity to be used** in a memory system. So there's a buffer between the memory controller and the individual memory devices in the individual ranks.

(Dkt. No. 174 at 14; Trial Tr. at 370:21-371:2) (emphasis added).) After testifying about these

additional elements, Dr. Mangione-Smith further explained that if Micron could not use the '417

Patent, the next best alternative that Micron suggested would be to use no data buffers or to use

single rank modules. (Dkt. No. 174 at 14-15.)

In opposition, Micron contends that the Court should disregard such expert testimony on

the grounds that it is based on an incorrect understanding of the claims. (Dkt. No. 156 at 11 (citing

*Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017) (ruling

first that the Court "must disregard the testimony of an expert that is . . . based on an incorrect

understanding of the claims, and then holding that "is the situation here, where Faerber . . . adds

an additional claim requirement."))).) Consequently, Micron argues that because a distributed data

buffer architecture is unclaimed, the technical benefit of the '417 Patent cannot be derived from

such an architecture. (Dkt. No. 156 at 12.)

Netlist further contends that Micron "essentially argues that the value of distributed buffers

should be entirely excluded from the damages award because the '417 patent does not explicitly

claim the buffer itself, but rather a mechanism enabling the buffer to function in a 2DPC system."

(Dkt. No. 174 at 16.) Netlist argues, however, that a damages award may reflect the value that the

claimed invention adds to the conventional elements. (*Id.* (citing *Univ. of Pittsburgh of*

*Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, 561 F. App'x 934, 947 (Fed. Cir. 2014) ("[I]f the claimed invention adds significant value to the conventional element(s), the damages award may reflect that value.").) Netlist then claims that the jury heard substantial evidence that the claimed invention is necessary for the benefits provided in a two DIMMs per channel (2DPC) system. (Dkt. No. 174 at 16.)  Micron responds that *University of Pittsburgh* recognizes that unclaimed features, nevertheless, have to be excluded from damages valuations. (Dkt. No. 177 at 5.)

After considering all the evidence in a light most favorable to the verdict, the Court finds that substantial evidence supports that the jury's award was based on the claimed features of the '417 Patent.[3] The jury heard evidence that the '417 Patent claims data buffers and related timing controls. (Trial Tr. at 218:15-24). The jury heard evidence that the '417 Patent, at a high level, is about a buffer between the memory controller and the individual memory devices in the individual ranks that allows more capacity to be used in a memory system. (*Id.* at 370:21-371:2)  The jury also heard evidence that the '417 Patent provides multiple benefits, including (i) a buffer that provides more capacity to be used, (ii) timing control technology, (iii) a logic element configurable to output data buffer control signals, and (iv) one additional clock cycle to be added in order to provide sufficient buffering time between the memory controller and the DRAMs. (*E.g.*, Trial Tr. at 218:15-19, 370:24-25, 381:3-10, 392:1-10).) The jury also heard evidence that without the use of the '417 Patent, "the load would be too high and it would block their products from being used in 2DPC or 3DPC configuration." (Trial Tr. at 426:10-14, 428:21-25).)

---

[3] The Court again notes that while Micron brings this Motion to challenge the sufficiency of the evidence, the crux of the Motion attacks the reliability, methodology, and admissibility of the evidence under the guise of sufficiency of evidence.  (*See, e.g.*, Dkt. No. 156 at 9 ("Netlist's damages theory hinges on this unclaimed feature . . .").) Unlike the appellant in *Enplas*, however, Micron did not challenge Netlist's damages theory under *Daubert* nor object to the admission of the testimony at trial it now complains about and, consequently, has procedurally waived arguments attacking Netlist's damages theory.

The jury then heard Netlist's damages expert takes those opinions into account to determine the value of the benefits provided by the claimed invention of the '417 Patent. This testimony included the cost of this alternative to Micron, which would be "$292.75" per customer and which would have resulted in a total benefit to Micron of "$33.26 million" for using Netlist's '417 technology. (Trial Tr. at 594:6-9.)  The jury subsequently heard evidence that this "$33.26 million" did not account for "all of the benefits that Micron obtained" because of the conservative approach taken by Netlist. (*Id.* at 594:9-17.) After hearing this evidence, the jury found in favor of Netlist and awarded it $20 million in damages for the '417 Patent, which was below the $33.26 million Mr. Kennedy opined was a reasonable royalty. (Dkt. No. 135 at 5; Trial Tr. at 609:13-15.)

Consequently, having considered all of the record evidence, the Court concludes the jury reached a reasonable decision supported by substantial evidence supports and declines to disturb the jury's judgment. *See Core Wireless*, 880 F.3d at 1361 ("The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion.").  Accordingly, the Court **DENIES** the Motion of no or nominal damages for the '417 Patent.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Micron's Motion (Dkt. No. 156) should be and hereby is **DENIED**.

The parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order.

**So ORDERED and SIGNED this 11th day of June, 2025.**


RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE