# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00294-JRG |
| | § | |
| MICRON TECHNOLOGY, INC., *et al.* | § | |
| | § | |
| *Defendants*. | § | |



## MEMORANDUM OPINION AND ORDER

Before the Court is the Rule 59 Motion for a New Trial (the "Motion") filed by Defendants

Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas,

LLC. (collectively, "Micron" or "Defendants"). (Dkt. No. 158.) In the Motion, Micron moves for

a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. (*Id.* at 1.) For the reasons

discussed herein, the Court finds that the Motion should be **DENIED**.

## I.    BACKGROUND

Plaintiff Netlist, Inc. ("Plaintiff" or "Netlist") alleged that Micron infringes claim 16 of

U.S. Patent No. 7,619,912 (the "'912 Patent") and claims 1, 2, 8, 11, 12, 13, and 14 of U.S. Patent

No. 11,093,417 (the "'417 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 100; Trial Tr.

at 1075:11-15.) After a trial in this case, the jury returned a unanimous verdict finding that

Defendants infringed the Asserted Claims of the Asserted Patents, that Defendants owed a total of

$445,000,000 in damages for their infringement, and that Defendants willfully infringed the

Asserted Patents. (Dkt. No. 135 at 4-6.) In this Motion, Micron moves for a new trial. (Dkt. No.

158 at 1.)

## II.    LEGAL STANDARD

Rule 59 provides that a new trial may be granted on all or part of the issues on which there has been a trial by jury for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Notwithstanding the broad sweep of Rule 59, "courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Metaswitch Networks Ltd. v. Genband US LLC*, 2017 WL 3704760, at *2 (E.D. Tex. Aug. 28, 2017); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 643 (E.D. Tex. 2017). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) ("A new trial is warranted if the evidence is against the great, and not merely the greater, weight of the evidence."). Furthermore, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

## III.    DEFENDANTS' MOTION FOR NEW TRIAL (DKT. NO. 158)

Micron moves for a new trial based on (1) conduct by Netlist that Micron alleges was inflammatory and misleading, (2) an allegedly prejudicial misstatement of the law by Netlist regarding infringement, (3) the Court's mid-trial claim construction that Micron alleges was unfairly prejudicial, (4) damages that Micron contends were excessive and resulted from an erroneous damages case, and (5) the Court's instruction on willful blindness. (Dkt. No. 158 at 1.) The Court addresses each in turn.

## A.    Allegedly Inflammatory and Misleading Conduct at Trial

Micron contends that Netlist's conduct at trial was so pervasively inflammatory and misleading that Micron was severely prejudiced to the extent that a new trial is warranted. (Dkt. No. 158 at 1.) Micron contends that there are four categories of conduct by Netlist that were inflammatory and/or misleading: (1) remarks that Micron's domestic investments were a mere "handout" from the "Biden Administration's Chips Act," (2) alleged use of the Court's standing MILs as both a sword and a shield, (3) the allegedly improper assertion that Micron had a duty to identify Micron and third-party patents that practiced the accused technology, and (4) the allegedly improper assertion that multiple Micron witnesses had a duty to investigate whether Micron uses Netlist's technology. (*Id.*)

### 1.    Netlist's Remarks Regarding the "Chips Act"

Micron contends Netlist intended to inflame the passions of the jury by repeatedly suggesting that Micron's investments in domestic facilities were the product of "handouts" from the Chips Act, which Netlist characterized as the "Biden Chips Act" and the "Biden Administration's Chips Act."[1] (Dkt. No. 158 at 1.) As an example of such conduct, Micron identifies Netlist's cross-examination of Micron's corporate representative, Scott Smith. (*See* Dkt. No. 158 at 2.)  The relevant part of that cross-examination by Netlist's attorney was as follows:

> Q. And, in addition, you spoke about the fact to the ladies and gentlemen of the jury that you're building these major factories for DRAM manufacturing in Idaho and in New York. Correct?
>
> A. Yes.

---

[1] Netlist argues that it did not invent this characterization, but it is instead attributable to Micron's own press release. (Dkt. Nos. 175 at 2; 175-2.) In response, Micron argues that "nowhere" in its press release does it characterize the "CHIPS and Science Act" as the "Biden Chips Act" or the "Biden Administration's Chips Act." (Dkt. 180 at 1.) The Court disagrees with Micron and finds that Micron's own press release both attributes the CHIPS and Science Act to the "Biden-Harris Administration" multiple times and clearly includes the phrase "President Biden's CHIPS program." (*See* Dkt. No. 175-2 (article entitled "Micron, Biden-Harris Administration, U.S. Senate Majority Leader Schumer Announce $6.1B in CHIPS and Science Act")).

Q. But the reality is, is that you are using funding from the Biden Administration's Chips Act to build those plants. Correct?

A. Yes, like other semiconductor companies, yes.

Q. And so any suggestion that you were building these plants on your own without support from the Biden Chips Act is improper.

(Trial Tr. at 876:8-19.) Micron contends that these questions caused it extreme prejudice because they came "at a tense moment in the United States only months before the upcoming presidential election in a sharply divided political climate" and "in a division where President Biden's popularity is known to be especially poor." (Dkt. No. 158 at 2.)

Netlist responds that Micron was the first party to inject the issue of its investment in U.S. manufacturing into the trial, presumably to "influence the passions of the jury by wrapping Micron in the American flag." (Dkt. No. 175 at 1.) Specifically, Netlist notes that counsel for Micron stated during his opening statement that:

Micron doesn't just design products; it makes them, and it makes them here in the United States and it makes them elsewhere. We're investing in semiconductor manufacturing here in the United States, including in Boise, Idaho where we're building the first new memory factory, memory manufacturing factory in 20 years.

(Trial Tr. at 182:10-15.) By raising this issue first, Netlist contends that Micron opened the door for Netlist to cross-examine Scott Smith on this issue. (Dkt. No. 175 at 2.)

Moreover, Micron admits that the Court sought to mitigate any prejudice by giving two separate curative instructions. (*See* Dkt. No. 158 at 2.) First, the Court instructed the jury during the cross-examination of Scott Smith, stating:

In the last exchange, counsel referred to funding for construction from, quote, the Biden Administration's Chips Act. The Chips Act is legislation passed by the United States Congress and signed by the President. It is not the sole source from this Administration, and you shouldn't link it to one administration or the other.

(Trial Tr. at 878:21-879:3.) Micron contends, nevertheless, that it was forced to move for a mistrial on this issue because "there's [no] way to cure that kind of skunk in the jury box." (Dkt. No. 180

1 (citing Trial Tr. at 908:24-25).) After hearing Micron's request for a mistrial, the Court denied

the request and found that the statements were "perhaps, to some degree, prejudicial," but not to

the "level of prejudice that requires a mistrial," nor would it be "impossible to cure" any prejudice

with an instruction. (*Id.* at 909:24-910:11.) The Court then instructed during its Final Jury

Instructions, stating:

> Ladies and gentlemen, you've also heard during the evidence of this case that
> Micron uses funding from the Chips Act to help assist in building certain of its new
> manufacturing plants in the United States. Plaintiff's counsel characterized the
> Chips Act as being "The Biden Administration's Chips Act". As I clarified for you
> at that time during the trial, the Chips Act is a bipartisan Congressional piece of
> legislation and is not the product of any single political party or administration.
>
> In this regard, ladies and gentlemen, two-thirds of the United States Senate voted
> in favor of the Chips Act, and that included the senior senator from Texas, John
> Cornyn. In addition, in the House of Representatives there was also broad bipartisan
> support for this legislation, including yes votes from Representative Kay Granger
> of Texas, who is the chair of the powerful House Appropriations Committee, as
> well as a yes vote from Representative Michael McCall, also from Texas, who is
> the chair of the prestigious House Foreign Affairs Committee.
>
> In short, ladies and gentlemen, the use of government funding through the Chips
> Act by Micron to assist in building a new domestic manufacturing facilities is not
> reflective of any political party or any partisan ideology.
>
> Further, your decisions in this case must not be influenced in any way by partisan
> political considerations, and you must not allow any of your own political views to
> impact or influence in any way your decisions as to the facts in this case.

(Trial Tr. at 1076:10-1077:12.)  Micron contends, however, that both of these instructions were

insufficient because (1) the instructions did not dissociate Micron's domestic activities from

President Biden, (2) the instructions did not dispel the false notion that Micron was reliant on

government handouts, and (3) Netlist used its rebuttal closing argument to "again inflame the

jury's passions" by arguing that "it was 'offensive and insulting' that Micron received a 'special

pass because they wave an American flag.'" (Dkt. No. 158 at 2 (citing Trial Tr. at 1137:1-19).)

5

Netlist argues, however, that it was Micron who re-raised the issue of domestic manufacturing during its closing argument, which made Netlist's response during its rebuttal closing appropriate. (Dkt. No. 175 at 4.)  Netlist also contends that Micron did not object to the curative instruction during the Formal Charge Conference as being insufficient nor did Micron object to the Netlist's closing argument at trial.  (Dkt. No. 175 at 4; Dkt. No. 187 at 1 (citing Trial Tr. at 1054:1-1062:4.)  Accordingly, Netlist contends that Micron waived any right to object now in its post-trial motions.  (Dkt. No. 175 at 4; Dkt. No. 187 at 1.)

To warrant a new trial, improper comments by counsel must impair substantial rights and cast doubt on the verdict.  *All Freight Sys. v. James*, 115 F. App'x 182, 187 (5th Cir. 2004); *True Believers Ink 2, Corp. v. Russell Brands, LLC.*, No. 4:18-CV-00432, 2020 WL 2113600, at *12 (E.D. Tex. May 4, 2020).  The conduct must be such as gravely to impair the jury's calm and dispassionate consideration of the case. *All Freight Sys.*, 115 F. App'x at 187; *True Believers Ink 2, Corp.*, 2020 WL 2113600, at *12.  In this case, Micron has not shown that the Netlist's conduct affected the verdict.  While Micron contends that President Biden's popularity was known to be "especially poor" in this division, it has not demonstrated that the jurors in this case were influenced, even in the slightest, by these comments.  The gap between Micron's generalized polling data for a six county area with an approximate population of 170,000 and how eight individual jurors might react to political references at trial is far too great a leap for this Court to make. The lack of evidence showing that Netlist's conduct influenced the jury is sufficient for the Court to deny the Motion as to this argument. *See True Believers Ink 2, Corp.*, 2020 WL 2113600, at *13 ("True Believers provides the Court with no support for its conclusion that Mr. Carter's use of the term 'perjury' affected the verdict. This lack of briefing is enough for the Court to deny True Believers' Motion as it has not demonstrated, factually or legally, that Mr. Carter's line of

6

questioning influenced the jury.") The Court concludes that these cross-examination questions and closing arguments did not impair Micron's substantial rights and they do not cast doubt on the verdict, particularly where (i) Micron first injected these issues into trial and the Court gave curative instructions at Micron's request, and (ii) where it was Micron who first raised this issue during its closing argument.

Further, to the extent that Micron claims the curative instructions during the Final Charge Conference were insufficient, the Court finds that Micron did not object to the sufficiency of the Court's curative instructions when given. *See* Trial Tr. at 1054:1-1062:4; *see also z4 Techs., Inc. v. Microsoft Corp.*, No. 6:06-CV-142, 2006 WL 2401099, at *15 (E.D. Tex. Aug. 18, 2006), *aff'd*, 507 F.3d 1340 (Fed. Cir. 2007) ("The Court presented its proposed jury charge to the parties, and Defendants did not object to the absence of the derivation instruction. Accordingly, Defendants waived any objection to the absence of the instruction."); *see also* Fed. R. Civ. P. 51. Moreover, as already stated above, the Court finds that it was appropriate for Netlist to respond in its rebuttal closing after Micron re-raised this issue in its closing argument. Such did not impair Micron's substantial rights nor does it cast doubt on the jury's verdict.

For these reasons, the Court finds that Micron's argument concerning the CHIPS Act fail.

## 2. Netlist's Use of the Court's Standing MILs

Micron next contends Netlist repeatedly used two of the Court's Standing MILs—No. 13 and No. 18—as both a sword and a shield in efforts to mislead the jury and leave Micron with no ability to defend itself. (Dkt. No. 158 at 3.) The Court will address each in turn.

### a.    Conduct Concerning the Court's Standing MIL No. 13[2]

Micron argues that Netlist made many misleading statements during the trial all while knowing that MIL No. 13 prevented Micron from correcting the misleading statements regarding earlier and/or ongoing litigation.  (*See* Dkt. No. 158 at 3-4.)

For example, Micron contends that Netlist intentionally made false statements that SK Hynix and Samsung proactively took licenses of the Asserted Patents from Netlist because they "recognized the importance of Netlist's innovation," had "adopt[ed] Netlist's patent and designs," and wanted to "follow[] the law of the United States," while contrasting Micron's choice to litigate. (Dkt. No. 158 at 3 (citing e.g., Trial Tr. at 173:15-174:7 (no objection); 227:1-8 (no objection); 577:19-23 (no objection); 578:25-579:6 (no objection); 1137:1-19 (no objection).)  Micron further contends Netlist "carefully omitted" that these licenses only came after years of litigation (or were the subject of current litigation), and MIL No. 13 prevented Micron from discussing these earlier or ongoing litigations to correct the misleading statements. (*See* Dkt. No. 158 at 3-4.)  Netlist notes (as referenced above) that Micron did not object to any of these statements, nor did it seek leave of Court to clarify any of this before the jury. (Dkt. No. 175 at 4.)  Netlist ultimately contends that these statements were accurate and supported by evidence. (*See id.* at 4-5.)

As another example, Micron contends that Netlist repeatedly stated and prompted the Court to instruct the jury over Micron's objections that the Asserted Claims of the Patents were valid, enforceable, and novel, and that Micron had conceded their validity, all while knowing that MIL No. 13 prevented Micron from discussing IPRs and the fact that the PTAB had already invalidated the '912 Patent.  (*See* Dkt. No. 158 at 4-5 (citing Trial Tr. at 163:18-165:4 (instructing

---

[2] The Court's Standing MIL No. 13 precludes parties from "introducing evidence, testimony, or argument regarding either party's other litigations or arbitrations, including parallel proceedings in any other court, tribunal, or forum, including ADR proceedings."

jury after preliminary instructions regarding validity, stating "[t]here's not a challenge to the validity of the patents in this case"); 241:15-243:4 (Netlist objecting in open court that "the patents are valid and enforceable," then the Court allowing Micron to cross-examine Mr. Milton on what Netlist did *not* invent); 312:16-313:25 (overruling Netlist's request, which was made outside the presence of the jury, for Dr. Mangione-Smith to opine on the validity of the Asserting Patents); 748:6-749:15 (denying Netlist's request, which was made outside the presence of the jury, to ask Dr. Stone whether he was rendering any validity opinions); 799:25-801:23 (concerning testimony elicited by Micron about whether command signals and DQ sending data were "new" followed by counsel for Netlist objecting that the Asserted Patents "are valid, non-obvious, and novel"); Final Instructions, 1094:13-15 ("Micron is not challenging the validity of the asserted patents in this case. Your job is not to determine whether or not the patents are valid or invalid in view of the prior art."). Micron contends that the collective effect of these statements stressed the novelty of the asserted claims while hiding that the PTAB had already invalidated the only asserted '912 Patent claim. (Dkt. No. 158 at 4.) In response, Netlist contends that it properly reacted to Micron's attempts to argue that Netlist's technology lacked novelty. (Dkt. No. 175 at 5.) Netlist also contends that the Court properly excluded reference to the IPR proceedings and appropriately instructed the jury that validity was not challenged in order to avoid confusion. (*Id.* at 6.)

Finally, Micron contends that Netlist made misleading statements to bolster its willfulness case—i.e., implying that Micron disregarded Netlist's 2021 licensing letter that purportedly provided notice of infringement—while omitting that as soon as Netlist filed suit, Micron immediately contested infringement. (Dkt. No. 158 at 5 (citing Trial Tr. at 176:2-7; 178:16-22, 220:25-222:7, 267:21-268:7, 776:17-784:7, 781:24-782:8).) While Micron admits that the Court then took curative action, Micron contends that this incident contributed to the overall

inflammatory conduct. (*Id.*)  In response, Netlist argues that Micron cannot show error or undue prejudice warranting a new trial because Micron was allowed to introduce its responsive evidence, which the jury was able to fully consider. (Dkt. No. 175 at 6-7.)

As a basic proposition, the Court finds that Micron has waived these post-trial arguments where it did not object to the same during trial. As noted, Micron never objected when Netlist stated that SK Hynix and Samsung took licenses from Netlist because they "recognized the importance of Netlist's innovation," had "adopt[ed] Netlist's patent and designs," and wanted to "follow[] the law of the United States." (Trial Tr. at 173:20-21 (no objection); 227:7-8 (no objection); 1137:4 (no objection)).)  Also, to the extent Micron contends Netlist used MIL No. 13 as a shield, Micron never asked the Court to find that Netlist had opened the door justifying leave for Micron to respond to these statements. The Court finds that its rulings during trial, along with its curative instructions, were effective to prevent unfair prejudice to Micron. The Court further notes that it was appropriate, for example, to exclude references to IPR proceedings and to instruct the jury that validity was not challenged as these issues would only lead to juror confusion, especially given that Micron never requested that the Court find the door had been opened for Micron to introduce this particular evidence.[3]  Accordingly, the Court does not find Netlist's use of MIL No. 13 acted as both a sword and a shield, and was not so prejudicial as to warrant a new trial.

---

[3] Micron does claim that by overruling "Micron's objections seeking to include a jury instruction on Micron's IPR proceedings," the prejudice was amplified. (Dkt. No. 158 at 5, n.6 (citing 1057:4-24 (objecting to the absence of an instruction on Micron's IPR petitions as "relevant to Micron's state of mind" and "relevant to willfulness")).) However, the Court concludes that reference to the IPR proceedings would result in jury confusion, as the issue then before the jury was to "validity" and not "willfulness."

### b. Conduct Concerning the Court's Standing MIL No. 18[4]

Micron also contends that Netlist made improper comparisons between accused products and non-accused products during the trial all while knowing that MIL No. 18 prevented Micron from rebutting these comparisons by contrasting its products with those non-accused products. (*See* Dkt. No. 158 at 6-7 (citing Trial Tr. at 168:17-22, 173:15-174:7, 227:4-17; 270:18-271:8, 576:5-577:23, 774:13-23, 867:24-868:11).) Micron cites as an example that Netlist elicited the following testimony from its VP of Engineering, Scott Milton:

> Q. What does this demonstrative depict?
>
> A. So what we're seeing here in this particular slide is on the left-hand side our HyperCloud product. So we see that register device in the middle, and we see those data buffers, or we at the time called them isolation devices. And on the right-hand side we see the SK hynix DDR4 LRDIMM, and it has those same features. Some of the names are different, but we see RCD and the distributed data buffer architecture in the SK hynix module.

(Trial Tr. at 227:9-17.)

Netlist contends that most of Micron's arguments are waived because Micron did not object to the testimony during trial, much less assert it was a MIL violation. The Court agrees. Micron did not object during opening statements (*see* Trial Tr. at 168:17-22, 173:15-174:7), nor did Micron object to relevant questioning during Scott Milton's testimony (*see* Trial Tr. at 227:4-17, 270:18-271:8). Micron also did not object during David Kennedy's direct examination (*see* Trial Tr. at 576:25-577:23), during Dr. Harold Stone's examination (*see* Trial Tr. at 774:13-23), or during Scott Smith's examination (*see* Trial Tr. at 867:24-868:11). Also, Micron acts as if a *limine* ruling is a final and permanent bar. It is not. It bars mention of identified material without prior

---

[4] The Court's Standing MIL No. 18 precludes parties from "introducing evidence, testimony, or argument for purposes of infringement or non-infringement comparing the accused product or method to the preferred embodiments, the specification, or any non-accused product or method."

leave of the Court. Micron now complains of matters it failed to seek leave to address during the trial.

Nonetheless, Micron contends that Netlist's argument regarding waiver "misses the point." (Dkt. No. 180 at 1.)  First, Micron argues that the Docket Control Order in this case explicitly states that the Parties' MILs are only for issues that if "improperly introduced at trial would be so prejudicial that the Court could not alleviate the prejudice by giving appropriate instructions to the jury." (Former Lead Case No. 2:22-cv-293, Dkt. No. 335 at 2.)  Second, Micron contends that a "new trial can be granted over no objection when it would 'seriously prejudice' the right to a fair trial.'" (Dkt. No. 180 at 2 (citing *Clapper v. Am. Realty Invs., Inc.*, 95 F.4th 309, 317 n.2 (5th Cir. 2024) ("We may grant a new trial, even when counsel fails to object in closing, if the closing argument 'affect[s] the substantial right of the parties' by 'seriously prejudice[ing] [Clapper's] right to a fair trial ....'") (internal citations omitted); *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 276 (5th Cir. 1998) ("Although we may review such challenges even where no contemporaneous objection was made, we are, of course, extremely reluctant 'to address for the first time on review errors which the trial court was not given the opportunity to consider and correct'. This extreme reluctance is grounded in several obvious reasons. Among other things, it is in keeping with the great deference we accord the decision by the trial judge, who was present and heard the evidence, to deny a new trial motion. At least a few pertinent objections were made during the Whiteheads' closing argument . . . . And, for the unobjected to, but now challenged comments, consistent with plain error review, we must reverse when necessary to preserve 'substantial justice'.") (internal citations and parentheticals omitted); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975) ("[W]e always possess the power to consider errors to which no objection was made. But a healthy regard for the necessity and desirability of having

errors corrected at trial rather than on appeal leads us to exercise that power only in exceptional cases where the interest of substantial justice is at stake.").

The Court finds that Micron's arguments are unavailing. First, Micron's argument as to the Docket Control Order carries no weight because that section is intended as to guide the subsequent pursuit of motions *in limine*.  That notation does not preserve any issue for post-trial,  especially when a party sits on its hands during trial and does not object. Second, the cases cited by Micron focus largely on the failure to object during closing arguments. In this case, however, Micron had many opportunities to object in this regard prior to closing arguments. It did not. Finally, the Court does not find that Micron was "seriously prejudiced" by Netlist's cumulative actions, particularly when compared to the facts in the cases cited by Micron. *See e.g., Whitehead*, 163 F.3d at 277 (noting that plaintiff's counsel continued making improper references and twice violated the court's ruling on defendant's objection). Nothing close to that happened here.

Accordingly, Micron has not preserved this argument. While the trial court should have an opportunity to prevent violations or give instructions to cure any harm, it is hard to do so when there is no objection at the time. *See Collins v. Wayne Corp.*, 621 F.2d 777, 785–86 (5th Cir. 1980) ("As discussed above, an objection is required to preserve error in the admission of testimony or the allowance of cross-examination even when a party has unsuccessfully moved *in limine* to suppress that testimony or cross-examination. Similarly, objection is required to preserve error when an opponent, or the court itself, violates a motion *in limine* that was granted. This rule is necessary to conserve judicial resources. Had plaintiffs' counsel promptly objected to the violations of the motion *in limine* in this case, the trial court could have either avoided the violations or given an instruction to cure any harm suffered by the plaintiffs. The courts cannot

13

adopt a rule that would permit counsel to sit silently when an error is committed at trial with the hope that they will get a new trial because of that error if they lose.").

### 3.    Duty to Identify Micron and Third-Party Patents

Micron further claims that Netlist improperly and repeatedly suggested that Micron had a duty to identify patents owned by it or third parties that covered the Accused Products. (Dkt. 158 at 7 (citing Trial Tr. at 178:2-15 (no objection); 516:19-518:16 (no objection); 582:6-24 (no objection); 608:6-609:9 (no objection); 771:9-772:3 (no objection) 871:12-23 (no objection); 1100:13-1101:8 (no objection); 1139:2-15 (no objection).)  Micron now contends that such a suggestion is improper, and because Netlist improperly attempted to shift the burden by arguing that because Micron had not carried its burden to identify Micron or third-party patents, its damages request was justified. (Dkt. No. 158 at 7.)

Netlist responds that whether Micron or other third-party patents cover the accused products is relevant to damages and apportionment, specifically whether there is additional technology that contributes to the benefits achieved by Micron.  (Dkt. No. 175 at 8.)  Netlist also contends that Micron forfeited the right to complain post-trial because Micron did not object to these questions. (*Id.*)

The Court agrees with Netlist. Micron surrendered its right to complain about these questions now when sat it on its hands during trial and failed to object and thereby give the Court a chance to prevent any violation or cure any harm suffered. Further, the Court agrees with Netlist that the existence or non-existence of other patents is relevant to the *Georgia-Pacific* factors and a technical benefits analysis generally.

### 4.    Duty to Investigate Whether Micron Uses Netlist's Technology

Micron asserts that Netlist repeatedly violated Micron's MIL No. 4, which prohibited any argument or evidence suggesting a party's corporate representative is obligated to prepare on any

particular topic, by asking multiple witnesses whether they had investigated whether Micron uses Netlist's technology. (Dkt. No. 158 at 7-8 (citing 178:2-7 (no objection); 554:18-555:3 ("Q: Did Micron investigate whether the distributed buffer design it implemented and that was shown at JEDEC was actually derived from Netlist? A. [Mr. Boe Holbrook]: Sir, it's outside of my knowledge."); 772:4-8 (no objection); 881:12-882:7 (no objection).)

Netlist responds that Micron waived this argument since it did not object. (Dkt. 175 at 9.) Netlist further contends that the questioning of Mr. Scott Smith and Mr. Boe Holbrook regarding any investigation of Micron's design was, in fact, within a designated topic. (*Id.* at 9-10 (citing Dkt. No. 175-4 at 11 ("Topic No. 119: The design, operation, configuration, and features of DRAM devices used and/or incorporated in Micron Accused DDR4 LRDIMMs and Micron Accused DDR4 RDIMMs."); Dkt. No. 175-3 at 27 ("Topic No. 77: Any competitive analysis or reverse engineering of any product manufactured, sold, sampled, or distributed by Netlist.").) Netlist also contends that there could be no MIL violation as to Dr. Stone because he was an expert witness and, as such, was not subject to that particular MIL. (Dkt. No. 175 at 9-10.)

The Court agrees with Netlist. Where Micron believed Netlist was violating its MIL, Micron should have objected and given the Court a chance to prevent such violation or cure any harm. However, again Micron failed to object at trial. To any extent such objection is not waived, the Court finds that the questions were within the scope of the designated topics and not a MIL violation. In any event, the Court finds this does not warrant a new trial.

### B. Netlist's Allegedly Prejudicial Misstatement of the Law

Micron argues that Netlist "wrongly suggested that the jury could find infringement merely if a component within the accused device is capable of performing a claimed function in a different product, even though the accused device itself cannot use that capability." (Dkt. No. 158 at 8.) Micron points to a line of questioning during Netlist's cross-examination of Micron's technical

15

expert, Dr. Harold Stone. (*Id.* (citing Trial Tr. at 710:23-715:20.)  During that examination, counsel for Netlist asked Dr. Stone about the effect of "comprising" claim language and the difference between apparatus and method claims. (Trial Tr. at 710:23-712:21.)  When Netlist asked, "And so for an apparatus claim, if there is functionality present in the Micron devices that infringes the claims, the question of when and where it's used is totally irrelevant. Correct?" Micron then objected. (*Id.* at 712:18-21.)  After a bench conference, the Court allowed counsel for Netlist to impeach Dr. Stone with his prior inconsistent statement. (*Id.* at 714:18-20.)  Counsel for Netlist then attempted to do so. (*See id.* at 716:19-23 ("Doctor Stone, you applied the rule that if there is a mode of operation that practices the claim, then the apparatus practices the claim regardless of whether or when it's used. Correct? A. That's what I said at deposition. That's correct.").)  Micron argues that Netlist's assertion that third-party RCDs satisfy the asserted claim limitation when operating in QuadCS mode is legally and factually improper.  Micron argues that Netlist's assertion fails because the accused *dual*-rank RDIMMs that the RCDs connect with cannot use encoded QuadCS mode as that mode is only used with *quad*-rank products. (Dkt. No. 158 at 8-9.)

Netlist responds that the jury was properly instructed that "[a]n accused product infringes a claim if it satisfies the claim elements, all of the claim elements, even though it may also be capable of non-infringing modes of operation." (Dkt. No. 175 at 10 (citing Trial Tr. at 1086:10-12).)  Netlist further responds that the jury's infringement verdict was supported by substantial evidence including that Dr. Stone admitted that Micron's dual rank modules have the capability of using QuadCS mode. (Dkt. No. 175 at 10-11 (citing Trial Tr. at 744:14-745:5).)  Moreover, Netlist contends that the jury understood from Micron's corporate representative that all the Accused Products—including *dual*-rank modules—contain the same RCD circuitry with the same relevant functionality. (Dkt. No. 175 at 11.)

16

Netlist further contends that the Court should reject Micron's argument for a separate and independent reason: Micron ignored Netlist's additional infringement theory—i.e., that single-rank MRS commands for multi-rank settings meet the disputed limitation. (Dkt. No. 187 at 4.) Specifically, Netlist claims that Micron chose not to cross-examine Netlist's technical expert on this theory, nor have its own expert or attorney address this theory. (*Id.*)

The Court is not persuaded that a new trial is warranted. As a preliminary matter, the Court finds that it properly instructed the jury that "[a]n accused product infringes a claim if it satisfies the claim elements, all of the claim elements, even though it may also be capable of non-infringing modes of operation." (Trial Tr. at 1086:10-12; *see Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) ("It is well settled that an accused device that 'sometimes, but not always, embodies a claim[ ] nonetheless infringes.'") (citation omitted).)  Further, the jury's verdict in this case is supported by sufficient evidence. As discussed above, the jury heard evidence regarding Micron's dual rank modules that the RCDs are connected to and have the capability of using the QuadCS mode. The Court disagrees with Micron's contention that Netlist presented no evidence on this issue. The Court also agrees with Netlist that it presented an additional infringement theory—i.e., that single-rank MRS commands for multi-rank settings meet the disputed limitation—which Micron did not address at trial. The Court concludes that the verdict is not against the great weight of the evidence. The Court declines to grant a new trial. Micron's motion for a new trial on this basis should be denied.

## C.    The Court's Mid-Trial Jury Instruction

Micron claims it was unfairly prejudiced when the Court not only stopped Micron's expert, Dr. Harold Stone, from opining that the "CAS latency" claim language required "read *and* write data transfers," but then instructed the jury that the '417 Patent's "CAS latency" claim terms could be infringed by either "a read *or* a write command." (Dkt. No. 158 at 9 (citing Trial Tr. at

17

806:17-808:3).) Micron claims it had no opportunity to consider the Court's mid-trial instruction, adjust its non-infringement positions, or proffer appropriate invalidity defenses. (*Id.* at 11.)

The Court finds that Micron was not unfairly prejudiced by the Court's clarifying instruction. As Netlist correctly points out, Micron developed its trial strategy with notice that the Court had construed the CAS latency terms to include "the time when data is made available to *or* from the memory module," which was consistent with the '417 Patent's "read *or* write" claim language. (Dkt. No. 175 at 11; Claim Construction Order, Lead Case No. 2:22-cv-293, Dkt. No. 228 at 34) (emphasis added).) The Court's clarifying instruction during trial was consistent with its pretrial construction. (Dkt. No. 175 at 12; *see* Trial Tr. at 807:7-9 ("I want to clarify for you that under the Court's construction, these claims can be infringed by a read or a write command.").) Furthermore, the Court's instruction was given only after Micron's counsel was warned during a bench conference that "[i]f he attempts to [convert the Court's 'or' construction to an 'and' construction], [the Court would] probably stop him. . . . [and] instruct this jury on what the Court's construction is . . . ." (Trial Tr. at 804:24-805:2.) With clear notice, Micron nevertheless proceeded to elicit such testimony from Dr. Stone. (*Id.* at 806:1-2 ("Well, in my opinion, it's read *and* write data transfers, both of them.") Counsel for Netlist objected that Micron was "trying to reconstrue the Court's construction," Micron withdrew the question, and then the Court gave its instruction as it had warned Micron it would, noting that "this issue has been a recurring issue throughout not only Doctor Stone's examination but throughout the case" and finding that "it's appropriate for the Court to clear this up by way of a specific instruction to the jury." (Trial Tr. at 806:17-21.)

The Court finds that its instruction was appropriate, particularly given Micron's attempts to present conflicting opinion testimony. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d

1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury."); *Finjan LLC v. SonicWall, Inc*., 84 F.4th 963, 971 (Fed. Cir. 2023) ("It is within the discretion of the district court to clarify or elaborate on the claim construction, so long as it is only 'elaborates on a meaning inherent in the previous construction.' *Mformation Techs., Inc. v. Research in Mot. Ltd*., 764 F.3d 1392, 1397 (Fed. Cir. 2014)."); *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd*., 599 F.3d 1308, 1316 (Fed. Cir. 2010) (finding that trial court's supplemental definition of a claim term during trial was not a fundamental procedural flaw that jeopardized the jury's verdict because "district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."); *Fenner Inv., Ltd. v. Microsoft Corp*., 632 F. Supp. 2d 627, 638 (E.D. Tex. 2009), *aff'd sub nom. Fenner Invs., Ltd. v. Microsoft Corp.*, 369 F. App'x 132 (Fed. Cir. 2010) ("[N]o party should be allowed to argue to the jury claim constructions that are contrary to the court's claim constructions or to reassert to the jury constructions that the court has already expressly or implicitly rejected.").

In sum, the Court does not find that Micron was unfairly prejudiced. A new trial on this basis is not warranted.

### D. Damages

Micron contends that if the Court does not grant Micron's JMOL on damages, it should at least grant a new trial or remittitur to the damages amounts testified by its experts. (Dkt. No. 158 at 11.) Micron argues that a new trial is warranted based on (1) the erroneous admission of Netlist's damages testimony, (2) the contention that Netlist failed to establish that any dual-rank DIMM implements encoded QuadCS mode, (3) the contention that Netlist violated the entire market value rule and improperly skewed the damages horizon by presenting the entire Accused Products'

revenue, and (4) the contention that the award was unduly excessive and against the great weight of the evidence based purportedly on testimony that Micron would have agreed to pay 100% of the revenue related to the Asserted Patents. (Dkt. No. 158 at 12-15.)

### 1.    Netlist's Damages Testimony

In its Motion, Micron contends that (1) Netlist's damages evidence as to the '912 Patent impermissibly failed to apportion, (2) Netlist's damages evidence as to the '417 impermissibly rested on an unclaimed feature, and (3) the Court failed to exclude Mr. David Kennedy's damages opinions when it denied Micron's motion to strike. (Dkt. No. 158 at 12.)  However, as Netlist points out in its sur-reply, Micron dropped its "re-hashed *Daubert* argument regarding the admission of Mr. Kennedy's damages testimony." (Dkt. No. 187 at 4.)[5]

The Court is persuaded that Micron's argument is simply a renewed *Daubert* argument, and the Court rejects such an argument as the basis for a new trial. *See United Servs. Auto. Ass'n v. PNC Bank N.A.*, Case No. 2:21-cv-00246-JRG, Dkt. No. 440, at 10 (E.D. Tex. Mar. 13, 2023) ("It is improper to use a motion for new trial as a renewed *Daubert* challenge.")  Moreover, as discussed in the Court's Memorandum Opinion and Order as to Damages, the Court has already rejected Micron's arguments that Netlist's damages evidence as to the '912 Patent impermissibly failed to apportion and Netlist's damages evidence as to the '417 impermissibly rested on an unclaimed feature. Ultimately, the Court is not persuaded that any of Micron's arguments concerning Netlist's damages testimony warrant a new trial.

### 2.    Dual-Rank DIMMs

In its Motion, Micron argues that because Netlist failed to establish that any dual-rank DIMM implements encoded QuadCS mode, the jury was unable to determine the damages for only

---

[5] Micron's decision to drop this argument from its reply brief further weakens this argument.

quad-rank DIMMs. (Dkt. No. 158 at 12.)  Netlist responds that not only did it submit sufficient evidence for the jury to find that Micron's dual-rank products infringe, but also that the testimony of its damages expert accounted for both dual-rank and quad-rank DIMMs and such expert did testify to damages were only RDIMM or LRDIMM products infringe. (Dkt. No. 175 at 13 (citing Trial Tr. at 619:4-7 █████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████

     The Court finds that Micron's arguments do not establish that a new trial is warranted. As a preliminary matter, Micron's argument is predicated on the Court granting JMOL of non-infringement as to the dual-rank DIMMs.  As discussed in the Court's Memorandum Opinion and Orders as to Non-Infringement, the Court finds that Netlist submitted sufficient evidence for the jury to find that Micron's dual-rank products infringe. Accordingly, a new trial on damages for the '912 Patent is not warranted.

        **3.**      **An Alleged Violation of the Entire Market Value Rule and Skewing of the Damages Horizon**

     Micron contends that it is entitled to a new trial on damages because Netlist's damages theory violated the entire market value rule and improperly skewed the damages horizon by presenting the entire Accused Products' revenue. (Dkt. No. 158 at 13.)  Specifically, Micron claims that though its "Accused Products are multi-component products" for which "Netlist's experts testified that only a single component infringes" (i.e., the RCD and the data buffer), Netlist introduced the entire revenue associated with Micron's products. (*Id.* (citing e.g., Trial Tr. at 575:11-14 ████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

In response, Netlist contends that because Micron did not object to Mr. Kennedy's analysis at the *Daubert* stage or to his testimony at trial, Micron's argument is waived and cannot be raised for the first time in its motion for new trial. (Dkt. No. 175 at 14 (citing *Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 668 (E.D. Tex. 2016) ("Usually, an issue that is raised for the first time on a motion for new trial or renewed motion for judgment as a matter of law is waived."). Micron claims, however, that it did object when Netlist attempted to introduce Micron's total sales revenue number at opening. (Dkt. No. 180 at 4 (citing an attachment to overnight dispute email entitled "Netlist and Micron's Disputes regarding Opening Demonstratives," Dkt. No. 180-3 at 14) (arguing that "[i]t is improper for Netlist to include the sales revenue number because it skews the damages horizon.").) Netlist responds that Micron made no objection on the record, and instead only half-heartedly made the argument in an overnight email submission to the Court. (Dkt. No. 187 at 5.)

The Court agrees with Netlist on this point: Micron failed to object to the testimony abouot which it now complains and it never obtained a definitive ruling on the record. (*See* Trial Tr. at

22

179:15-17 (no objection); 575:11-14 (no objection); 588:21-24 (no objection); 590:8-9 (no objection); 591:23-592:1 (no objection); *see also* Fed. R. Evid. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: (1) if the ruling admits evidence, a party, on the record: (A) timely objects or moves to strike; and (B) states the specific ground, unless it was apparent from the context;").)  Accordingly, because Micron never objected on the record, Micron's argument has been waived.[6]  Having found that Micron's argument is waived, the Court finds no need to address this argument on the merits. Further, even if waiver did not apply here, Micron has failed to make a persuasive showing that the testimony cited caused it material prejudice or skewed the damages horizon, such that would warrant a new trial.

### 4.     Alleged 100% Apportionment of the Revenue

Micron contends that the Court should grant a new trial on damages because the jury's award was excessive and against the great weight of the evidence. Micron argues that the jury

---

[6] Ample case law supports the Court's decision that Micron has waived this argument. *See, e.g., Genmoora Corp. v. Moore Bus. Forms, Inc.*, 939 F.2d 1149, 1156 (5th Cir. 1991) (finding that "Moore did not preserve any error in admitting Pert's testimony because Moore failed properly to object to that testimony at trial or to obtain a proper ruling on the record on its objection. . . . Without a specific objection and a ruling on the record, we are unable properly to evaluate the trial court's exercise of discretion."). In other cases where the nonmoving party contended that the moving party failed to object, the courts expressly found that the moving party did, in fact, object to the evidence. *See, e.g., Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319 (Fed. Cir. 2011) (declining to second-guess the district court's explicit recognition of Microsoft's objections to Uniloc's use of the $19 billion check number as improper under the entire market value rule where the district court explicitly noted that Microsoft objected specifically under the entire market value rule to use of a demonstrative pie chart and though Microsoft did not repeat its objection, it had made Microsoft's position sufficiently clear to preserve the instant challenge); *see also Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579, 594 (D. Del. 2019) (stating that defendants objected to plaintiff introducing the large revenue number during the trial and going so far as to instruct the parties that it "would police the testimony given, thereby indicating that Defendants would not need to make an individual objection to every instance where the 'billions' figure was mentioned"), *aff'd*, 981 F.3d 1030 (Fed. Cir. 2020) ("The district court's finding of no waiver is particularly well-founded in light of the court's statement during trial that it would enter its own objection if it heard such arguments being made."). Each of those cases stand in stark contrast to this case where no objection was made on the record. To the extent that Micron contends it preserved its objection by submitting an informal submission without a definitive ruling on the record, such is insufficient to preserve an objection. *See* Fed. R. Evid. 103(a) (requiring objections to be made "on the record"); *see also United States v. Cramer*, No. 1:16-CR-26, 2020 U.S. Dist. LEXIS 252209, at *4 (E.D. Tex. 2020) ("Defendants do not assert that they were denied an opportunity to return to the courtroom and have a record made . . . .").

award was predicated on testimony that Micron would have agreed to pay Netlist 100% of the revenue purportedly related to the Asserted Patents. (Dkt. No. 158 at 14 (citing 589:3-590:5 (discussing whether Micron would lose sales if it had to reduce the speed); 593:6-594:2 (discussing the cost of Micron's next best alternative).)[7]

As a preliminary matter, Netlist responds that Micron's argument as to an alleged 100% royalty is waived because it was not raised at *Daubert* or during trial. (Dkt. No. 175 at 15.) The Court agrees. Micron's arguments are attacks on the Plaintiff's expert's methodologies that go directly to the reliability of his theories. (*See, e.g.*, Motion, Dkt. No. 158 at 14 (arguing that Netlist's "theory cannot be reconciled with the law or the facts.").) Accordingly, Micron's argument has been procedurally waived because Micron failed to raise it at *Daubert* and is now improperly raising it for the first time in its motion for new trial. *See KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 889, 891 (E.D. Tex. 2020).

Even if Micron's argument is not waived, Netlist argues that Micron is incorrect because its expert never testified that "Micron would have agreed to pay Netlist 100% of the revenue purportedly related to the asserted patents." (Dkt. No. 175 at 15.) Having reviewed the citations to the record provided by Micron, the Court agrees with Netlist.

The Court is also persuaded by Netlist's contention that Plaintiff's expert testified for an award of only the apportioned value of Micron's use of the invention based on a next-best non-infringing alternative approach. This was only a fraction of Micron's revenue from the Accused Products. (*See id.* at 13-14, 15 (citing, e.g., Trial Tr. at 586:14-19; 594:6-9).) Furthermore, the Court notes the Federal Circuit has previously approved this methodology. (*Id.* (citing *Apple Inc.*

---

[7] The Court notes that after Netlist filed its Response Brief contending that Micron's argument has both been waived and is incorrect, Micron decided not to provide the Court with any additional arguments in its Reply Brief that might rebut Netlist's arguments or further support for its position.

*v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014) (stating that a party may "estimate the value of the benefit provided by the infringed features by comparing the accused product to non-infringing alternatives"), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).)

Even if Plaintiff's expert had testified that Micron would have agreed to pay Netlist 100% of the revenue related to the Asserted Patents, Netlist argues that the Federal Circuit has expressly held that there is nothing improper about awarding the patentee 100% of the incremental value. (Dkt. No. 175 at 15 (citing *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011)).) This Court has already considered this same post-trial argument in a related case, *Netlist, Inc. v. Samsung Electronics Co., Ltd., et al.,* No. 2:21-cv-463, Dkt. No. 606 at *46-47 (E.D. Tex Jul. 15, 2024), and found that precedent supports the contention that a patentee can receive the entirety of the value of the patents in a hypothetical negotiation in certain circumstances. There is substantial evidence in this case that Micron would have agreed to let Netlist retain the full incremental benefit (i.e., 100% of the value) of the patented technology. *See, e.g.*, Trial Tr. at 586:1-4 ("And really the benefits I saw was that Micron and based on what I heard from Doctor Mangione-Smith, that without the Netlist technology, they wouldn't be able to sell these high performance DIMMs and these LRDIMMs for high density servers.");

25

██████████████████████████████████████████

████████████

For the reasons discussed above, the Court finds that a new trial is not warranted.

### E.    The Court's Instruction on Willfulness

Micron argues that the Court should grant a new trial as to Netlist's willfulness claims because (1) no legally sufficient evidence supports the jury's willfulness verdict, and (2) the Court improperly instructed the jury that willful blindness could satisfy the "deliberate or intentional" prong of the willfulness inquiry. (Dkt. No. 158 at 15.)

The Court does not find that a new trial on willfulness is warranted. As discussed in the Court's Memorandum Opinion and Order as to Willfulness, the Court has already concluded that enhancement of the compensatory award is not warranted under 35 U.S.C. § 284, and, consequently, the Court elected not to enhance the damages awarded.  As courts do not grant new trials unless the party seeking the new trial satisfies its burden of showing harmful error, the Court sees no reason to grant a new trial on willfulness when the Court has already elected not to enhance damages. *See Metaswitch Networks Ltd.*, 2017 WL 3704760, at *2; *see also Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 527 F. Supp. 2d 1076, 1083 (N.D. Cal. 2007) ("Because the Court has declined to enhance damages based on willfulness, Defendant's Motion for a New Trial is denied as moot.").[8]

---

[8] As stated in the Court's Memorandum Opinion and Order, case law supports the Court's decision. *See, e.g.*, *VirnetX Inc. v. Apple Inc.*, No. 6:12-CV-00855-RWS, 2018 U.S. Dist. LEXIS 230877, at *51-52 (E.D. Tex. 2018) ("Because the Court declines to award enhanced damages, Apple's willfulness JMOL and new trial motions are moot."); *Baden Sports, Inc. v. Kabushiki Kaisha Molten*, 541 F. Supp. 2d 1151, 1165 (W.D. Wash. 2008) ("The Court has already decided *not* to award Baden enhanced damages or attorneys' fees. Because the jury's willfulness finding has no effect on this litigation, the issue is moot and the motion for a new trial on the issue of willfulness is denied.") (citation omitted).

## IV:    CONCLUSION

For the reasons stated herein, the Court finds that Micron's Motion for a New Trial (Dkt. No. 158) should be and hereby is **DENIED**.

The parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order.

**So ORDERED and SIGNED this 11th day of June, 2025.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE